# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | | |
|---|---|---|
| GERARD MORRISON, et al., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:14cv5 |
| | ) | |
| vs. | ) | Judge Hilton |
| | ) | Magistrate Judge Anderson |
| COUNTY OF FAIRFAX, VA., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF DEFENDANT'S LIABILITY FOR ITS FAILURE TO PAY FAIR LABOR STANDARDS ACT OVERTIME PAY TO ITS FIRE CAPTAINS

Molly A. Elkin (Va. Bar No. 40967)
Sara L. Faulman
Robin S. Burroughs
WOODLEY & McGILLIVARY
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC  20005
Phone:  (202) 833-8855
mae@wmlaborlaw.com
slf@wmlaborlaw.com
rsb@wmlaborlaw.com

August 8, 2014

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

I.   INTRODUCTION ........................................................................................... 1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS .................................. 2

   A.  Fairfax County Fire and Rescue Department ................................................. 2

   B.  Captains Work Hours in Excess of the FLSA Maximum Without Earning FLSA
       Overtime Pay ......................................................................................... 3

   C.  The Captains Should Be Covered By the Overtime Protections of the FLSA Because
       They Do Not Qualify For Any Exemption ..................................................... 4

      1.  The Most Important Job Duty Performed by Captain I Shift Supervisors and
          Captain II Station Commanders Is Fire Fighting and Emergency Response .......... 5

      2.  EMS Captain IIs' Most Important Job Duty Is Emergency Response ................. 11

      3.  Captain I Safety Officers' Most Important Job Duty Is Emergency Response ..... 13

      4.  The Captains Do Not Have the Authority to Hire, Fire or Promote ..................... 15

      5.  Lieutenants Perform Many of the Same Job Duties as Captains ........................... 15

III. STANDARD OF REVIEW ............................................................................. 17

IV.  ANALYSIS .................................................................................................... 17

   A.  The FLSA Requires Employers to Pay Employees FLSA Overtime Pay for Hours
       Worked in Excess of the Overtime Threshold ............................................... 17

      1.  Station Captains' Primary Job Duty Is Emergency Response ........................... 23

      2.  EMS Captain IIs' Primary Job Duty Is Emergency Response .............................. 24

      3.  Safety Officers' Primary Job Duty Is Emergency Response ............................... 25

   B.  Station Captains Are Not Exempt From the FLSA ......................................... 26

   C.  EMS Captain IIs Are Not Exempt From the FLSA ......................................... 27

   D.  Safety Officers Are Not Exempt From the FLSA ........................................... 28

V.   CONCLUSION .............................................................................................. 30

# TABLE OF AUTHORITIES

**Federal Statutes**

29 U.S.C. §207 ................................................................................................................. 17

29 U.S.C. §213 ......................................................................................................... 18, 19, 21

**Federal Regulations**

29 C.F.R. §541.100 .................................................................................................... passim

29 C.F.R. §541.200 ......................................................................................................... 29

29 C.F.R. §541.203 ......................................................................................................... 29

29 C.F.R. §541.3 ....................................................................................................... passim

29 C.F.R. §541.700 ............................................................................................ 20, 21, 26

29 C.F.R. §553 ............................................................................................................... 17

**Supreme Court Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................. 17

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960) ................................................... 18

*Auer v. Robbins*, 519 U.S. 452 (1997) ......................................................................... 21

*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984) ......................................... 21

**U.S. Court of Appeals Cases**

*Bacon v. Eaton Corp.*, 2014 U.S. App .LEXIS 8375 (6th Cir. 2014) ......................... 27

*Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008) ............................................. 18

*Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822 (10th Cir. 2012). ................ 2, 19, 24

*Mullins v. City of New York*, 653 F.3d 104 (2d Cir. 2011) .................................. passim

*United States DOL v. N.C. Growers Ass'n*, 377 F.3d 345 (4th Cir. 2004) ................. 18

*Zuber v. Apc Natchiq, Inc.*, 144 Fed. Appx. 657 (9th Cir. 2005) ............................... 30

**U.S District Court Cases**

*Barrows v. City of Chattanooga*, 944 F. Supp. 2d 596 (E.D. Tenn. 2013) ........... passim

**Other Authorities**

69 Fed. Reg. 22,122 (Apr. 23, 2004) ............................................................. 18, 19, 25

Fed. R. Civ. P. 56 ......................................................................................................... 17

## I.  INTRODUCTION

Plaintiffs are 176 current and former fire fighters employed in defendant's Fire and Rescue Department who seek overtime pay under the Fair Labor Standards Act (FLSA) for periods that they have worked as Fire Captain Is, Fire Captain IIs, EMS Captain IIs, and Captain I Safety Officers. No material facts are in dispute, and plaintiffs are entitled to summary judgment on defendant's liability for its failure to pay overtime to plaintiffs under the FLSA.

Plaintiffs' primary job duty is emergency response. Fire Captains ride as part of a crew on a fire engine, put their lives in danger on a daily basis by responding to all calls assigned to their engine and engage in front line, hands-on firefighting with their crew members. EMS Captain IIs are dispatched to life-threatening accidents to provide emergency medical care. Safety Officers are dispatched to emergency calls where they actively engage in ensuring that the fire or emergency scene remains under control. Captains, like their fellow crew members, have no discretion to refuse to respond to a call when dispatched — when they are dispatched, they drop everything and respond. Yet, the County refuses to pay the Captains FLSA overtime.

Multiple courts and the Department of Labor (DOL) have held that first-line supervisors who engage in fire fighting and emergency response, like the Captains here, must be paid FLSA overtime. The County, however, contends that the Captains are exempt from the FLSA as executive or administrative employees. To reach this conclusion, the County ignores the recent DOL regulation, which has the force and effect of law, that specifies that fire department employees, "regardless of rank or pay" who direct the work of their co-workers are not exempt as executives or administrators because fire fighting is their primary job duty. 29 C.F.R. §541.3. DOL enacted this regulation specifically directed at fire department supervisors in the field to clarify that such employees do not qualify for these exemptions to the FLSA, and DOL's interpretation that such front line supervisors are entitled to FLSA overtime has been upheld by

two appellate courts. *Mullins v. City of New York*, 653 F.3d 104 (2d Cir. 2011); *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 829 (10th Cir. 2012). Given that the Captains here are first and foremost fire fighters and first responders, it is undisputed that their most important job is to respond quickly to calls for emergency service and, along with their crews, perform hands-on firefighting and patient care. Because these first response duties are the most important duties that plaintiffs perform, and are more important than the ancillary and ministerial tasks performed by the Captains when they are not in the field, in accordance with the DOL regulation that specifically applies to them, the plaintiffs are covered by the FLSA, and the County's attempt to evade the overtime requirements of the FLSA is plainly in error.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Fairfax County Fire and Rescue Department

1.   The mission of the Fairfax County Fire and Rescue Department ("Fire Department" or "FCFRD") is to protect the lives, property, and environment of Fairfax County.[1]

2.   The Fire Department is a quasi-military organization following a rank structure divided into different bureaus. Employees are expected to follow the chain of command. The chain of command in the operations department, from highest to lowest, is: Fire Chief, Assistant Fire Chiefs, Deputy Fire Chiefs, Battalion Chiefs, Captain IIs and Is, Lieutenants, Master Technician, Technician, and fire fighter.[2]

3.   Plaintiffs are current and former FCFRD employees who have worked in one or more of the following positions since January 2011: Captain I shift supervisor, Captain II station

---

[1] Caussin Tr.99, App.99. Citations to deposition excerpts shall be the deponent's name followed by "Tr." and the page number. Citations to the Appendix, which includes unreported decisions, the Federal Register, and a DOL *amicus* brief, shall be "App." followed by the page number.
[2] Chain of Command SOP 01.01.01 (PX33); Caussin Tr.55–58. App.751-752, 89-92.

commander; Captain II EMS supervisor and/or Captain I safety officer ("Captains").[3]

4.   Captain I shift supervisors, Captain II station commanders and Captain II EMS supervisors are assigned to the Operations Bureau ( "Operations Captains"). Captain I safety officers are assigned to the Safety and Personnel Service Division ("Safety Officers") but work out of fire stations in Operations.[4]

5.   The Fire Department has 38 stations, each with a designated geographic response area in Fairfax County.[5]

6.   There are various types of Fire Department vehicles. "Trucks" are vehicles with either a tower ladder or aerial ladder.[6] "Ambulances" are emergency medical service ("EMS") transport units with one emergency medical technician ("EMT") and/or EMT-paramedic or advanced life support ("ALS")-certified fire fighter. FCFRD has 42 ambulances. "Engines" are fire engines staffed with 4 fire department personnel: an officer (*i.e.*, a Captain or Lieutenant), an apparatus technician ("driver"), a fire fighter or fire fighter medic, and an ALS technician. FCFRD has one engine per station.[7]

## B.   Captains Work Hours in Excess of the FLSA Maximum Without Earning FLSA Overtime Pay

7.   Plaintiffs are assigned to work one of the A, B, or C shifts; each shift is 24 hours. The Operations Captains and the Safety Officers are assigned by the FCFRD to work out of one of the defendant's 38 fire stations.[8]

---

[3] Answer (DE 57), ¶¶1–4, 6, 8; Plaintiff Captain Positions (PX32). App.741-750.
[4] Answer (DE 57), ¶¶2–4; Caussin Tr.55-57, 66. App.89-91,93.
[5] Caussin Tr.56. App.90.
[6] Caussin Tr.107. App.101.
[7] Caussin Tr.103, 107-108,141,155; Strategic Plan (PX 34) at 6. App.100-103,108, 753-54.
[8] Garcia Tr.35-36; Mundy Tr.27; Dyer Tr.27-29; Woodruff Tr.118.  App.300-01, 559, 238-85, 674.

8. Plaintiffs are regularly scheduled to work 216 or 240 hours in a 28-day work period.[9]

9. Plaintiffs do not receive time and one-half overtime pay for hours that they work in excess of 212 hours in a 28-day work period or in excess of 40 hours per workweek.[10]

10. Pursuant to the County's compensation plan issued for each fiscal year, Captain Is are paid at the F-25 grade, Captain IIs at the F-27 grade, and Lieutenants at the F-22 grade.[11]

11. Lieutenants, and fire fighters below the rank of Lieutenant, earn one and one-half times their regular rate of pay for all hours of work in excess of 212 in a 28-daywork period.[12]

12. Without factoring in overtime, Captain Is who are in steps 1 through 8 of Grade 25 earn less than Lieutenants at the top of the Lieutenant pay scale, and Captain IIs who are in steps 1 through 6 of Grade 27 earn less than Lieutenants at the top of the Lieutenant pay scale.[13]

13. Once overtime is calculated, Lieutenants in the middle of their pay scale earn more than Captains, who do not receive FLSA overtime pay.[14]

14. Lieutenants have postponed promotional opportunities because they will make less money as Captains while performing the same or similar tasks performed as Lieutenants.[15]

### C.  The Captains Should Be Covered By the Overtime Protections of the FLSA Because They Do Not Qualify For Any Exemption

15. Captain I shift supervisors all have the same job responsibilities, duties, and authority, regardless of the fire station or shift to which they are assigned.[16]

16. Captain II station commanders all have the same job responsibilities, duties, and authority,

---

[9] Garcia Tr.42–43; Mundy Tr.31. App. 302-03, 560-61.
[10] Woodruff Tr.24-26; Mundy Tr.73–74, App. 666-68, 567-68.
[11] Garcia Tr.87–89, App.304-306.
[12] Mundy Tr.37–38, App.562-63.
[13] Mundy Tr.120–21; Compensation Plans, FY 2010–13 (PX6). App. 569-70, 681-86.
[14] Mundy Tr.121 App.570.
[15] Conrad Tr.194–95; Higginbotham Tr.251–52; Thompson Tr.249. App.217-18, 412-13, 613.
[16] Woodruff Tr.118; Caussin Tr.89–90; Beasley Tr.30. App.674, 94-95, 8.

regardless of the fire station or shift to which they are assigned.[17]

17. EMS Captain IIs all have the same job responsibilities, duties, and authority, regardless of the station or shift to which they are assigned.[18]

18. Captain I Safety Officers all have the same job responsibilities, duties, and authority, regardless of the shift or station to which they are assigned.[19]

19. Promotion to a Captain position requires completion of a promotional examination, Prospective Captains are then placed on a list. When a captain vacancy occurs, the Fire Chief promotes from the list.[20]

20. The Captain promotional examination focuses on how the applicants would respond and perform operationally (*i.e.*, on the fire ground). If a prospective Captain fails the operational portions of the test, he will not move on to the rest of the test.[21]

21. Captains, like the subordinate members of their crew (*i.e.*, lieutenants and fire fighters assigned to their station), regularly sustain job-related injuries.[22]

## 1. The Most Important Job Duty Performed by Captain I Shift Supervisors and Captain II Station Commanders Is Fire Fighting and Emergency Response

22. Captain I shift supervisors and Captain II station commanders (collectively, "Station Captains") perform many of the same job duties, although Captain II station commanders

---

[17] Woodruff Tr.118; Caussin Tr.90–91. App.674, 95-96.

[18] Caussin Tr.94-95. App.97-98.

[19] Dyer Tr.25, 28. App.282, 284.

[20] Cochrane Tr.190; Robb. Tr.20; Garcia Tr.126–33; Beasley Tr.47. App. 183, 572, 307-14, 10.

[21] Fire Captain II Job Listing #13-0459 (PX14); Walser Tr.142-43; Cochrane Tr.229-31, App.737-40, 655-56, 189-91.

[22] Line of Duty Injuries (PX11); Beasley Tr.334–36; Brandell Tr.249–52; Conrad Tr.27–30; Davis Tr.278–80; Gonzalez Tr.110, 126, 129–32; Higginbotham Tr.47–48, 161; Jackson Tr.27–29; Menton Tr.28–31; Montague Tr.26–27; Robb Tr.229–33. App. 693-736, 38-40, 71-74, 204-07, 268-70, 351-56, 386-87, 396, 415-16, 497-99, 515-16, 592-96.

have some additional ancillary duties.[23]

23. Station Captains are assigned to ride on the engine as one member of a four-person crew; Station Captains respond to calls with their assigned crew on the same apparatus.[24]

24. Station Captains respond to the same number of emergency calls as fire fighters and technicians on their crew.[25]

25. The County prepared a report for all plaintiffs in this case that measures the time from when that plaintiff was dispatched in a fire engine or other apparatus until that call cleared and calculated the average amount of time spent "in the field" per shift for each plaintiff. The report was incomplete as it did not measure the time from when the unit was dispatched until it returned to the fire station, treated employees working fractions of a workday (for example, employees held over until relief arrives) as full 24 hour shifts in computing the average, which results in a lower average time in the field per shift, and inexplicably eliminated any calls that lasted over twelve hours from the calculation of the average time in the field.[26]

26. According to the County's own flawed report, the 176 plaintiffs were dispatched to 190,677 incidents from November 10, 2010 to January 1, 2014, and spent a total of 67,765

---

[23] Cunningham Tr.25–26. App.222-23.

[24] Caussin Tr.157; Beasley Tr.35, 147-48; Betz Tr.132-33; Brandell Tr.281; Cochrane Tr.253; Conrad Tr.193; Cunningham Tr.253; David Tr.274–75; Goff Tr.107; Gonzalez Tr.280; Jackson Tr.146; Johnson Tr.121-22; Lange Tr.91-92; Menton Tr.140-41; Montague Tr.122; Morrison Tr.132-33; Vannoy Tr.287-88; Walser Tr.146-47. App. 109, 9, 15-16, 58.1-59, 75, 197, 216, 245, 265-66, 330, 377, 424, 446-47, 477-78, 511-12, 533, 553-54, 635-36, 659-60.

[25] Caussin Tr.175-80; Beasley Tr.334; Cochrane Tr.254; Conrad Tr.193; Cunningham Tr.253; Davis Tr.275-76; Goff Tr.107-08; Gonzalez Tr.280; Higginbotham Tr.238; Jackson Tr.146–47; Johnson Tr.122; Lange Tr.232-33; Menton Tr.141; Montague Tr.122; Morrison Tr.133; Robb Tr.221-22; Walser Tr.147. App. 110-15, 38, 198, 216, 245, 266-67, 330-31, 377, 405, 424-25, 447, 486-87, 512, 533, 554, 588-89, 660.

[26] Ardike Report (PX48); Ardike Supp.; Ardike Tr.56, 92-93, 129. App.755-87, 891-94, 2–5.

hours from dispatch until clear time in the field.[27]

27. On fire and emergency scenes, in addition to leading members of their crew, Station Captains are actively engaged in the prevention, control or extinguishment of fires with their crew. Station Captains frequently run hose into burning buildings, ventilate buildings, throw ladders, and force entry. Station Captains also search buildings for victims to rescue or for signs that a fire may spread.[28]

28. Station Captains also regularly perform emergency medical care and must be licensed in basic life support skills. They assess vital signs including heart rate and blood pressure, perform CPR, control a patient's bleeding, manage airways, and lift patients for transport.[29]

29. Station Captains are required to be ready to immediately respond to calls for emergency service during all hours they are on duty.[30]

30. Station Captains are required to respond immediately when dispatched by the County; they do not have discretion to refuse to go on a call.[31]

31. When Station Captains are dispatched, they stop everything they are doing and immediately respond with the other members of their crew. If a Station Captain fails to

---

[27] Ardike Tr.56, 92-93, 129. 133; Ardike Supp. at 3, App. 2-5, 893.
[28] Cunningham Tr.12-13, 249–50; Beasley Tr.332; Goff Tr.128-31; Lange Tr.27–28, 229-31, 240–41; Vannoy Tr.173–75; Cochrane 256–59; Gonzalez Tr.278–279; Davis Tr.278–80; Brandell Tr.289–90; Conrad Tr.191–92. App.220-21, 241-42, 332, 338-41, 475-76, 483-85, 489-89.1, 616-18, 199-02, 375-76, 268-70, 81-82, 220-21, 214-15.
[29] Beasley Tr.120-21, 332-33; Brandell Tr.287-88; Conrad Tr.192-93; Gonzalez Tr.150-151,278-80; Robb Tr.220-21; Vannoy Tr.288-89; Conrad Tr.192-93; Higginbotham Tr.238-39; Lange Tr. 27-28, 250; Menton Tr.139-40; Montague 117–18; Goff Tr.106–07. App. 11-12, 36-7, 79-80, 215-16, 357-58, 375-77, 587-88, 636-37, 215-16, 405, 475-76, 491, 510-11, 531-32, 329-30.
[30] Caussin Tr.311; Brandell Tr.105-06; Goff 93-4; Morrison Tr.35.App. 164, 66-67, 322-23, 538.
[31] Caussin Tr.236, 150–51; Davis Tr.275; Vannoy Tr.145; Brandell Tr.284-85; Johnson Tr.122; Jackson Tr.147. App. 138, 106-07, 266, 615, 77-78, 447, 425.

respond to a dispatch, he or she is subject to discipline. [32]

32. When Station Captains are dispatched, they, along with the Lieutenants and fire fighters on their crew, are required to wear personal protective equipment ("PPE").[33]

33. Different events determine what PPE a Station Captain and his crew are required to don. For example, personnel don different equipment at a medical scene than at a fire scene. Station Captains, the same as the rest of their crew, must follow department policy regarding which equipment to don for each specific type of incident. Captains don the same gear as the rest of their crew when responding to structure fires and other emergency incidents.[34]

34. Station Captains train with their crew on a daily basis. The Fire Department expects the entire crew, including the Captains, to train for an average of two hours per shift.[35]

35. Examples of training include search and rescue techniques, forcing entry, or street drills. Training is led by personnel assigned to the station, regardless of rank and, as such, can be led by fire fighters, technicians, Lieutenants, or Station Captains on any given day.[36]

36. The FCFRD Training Division mandates certain training of the entire crew, including the Captains, Lieutenants, and fire fighters. The crew is also expected to perform training to

---

[32] Caussin Tr.183–84, 227–34, 318; Cochrane Tr. 246-47; Goff Tr.108–09; Higginbotham Tr.240–45; Jackson Tr.146–47; Johnson Tr.123–24; Lange Tr.233–34; Menton Tr.141–42; Morrison Tr.120–28; Vannoy Tr.266–67, 274–81; Walser Tr.147. App. 116-17, 130-37, 168, 194-95, 331-32, 406-11, 424-25, 448-49, 487-88, 512-13, 543-51, 619-20, 622-29, 660.
[33] PPE SOP (Aug. 14, 2013) (PX66) at 15-00007; Caussin Tr.253, 258–262; Robb Tr.156–58. App. 810, 145, 147-51, 579-81.
[34] PPE SOP (PX66); Caussin Tr.260-268. App. 803-37, 149-57.
[35] Caussin Tr.190–91, 195, 198–99, 211–14; Beasley Tr.331; Betz Tr.129–30; Brandell Tr.145–46; Cunningham Tr.245; Goff Tr.99; Gonzalez Tr.272; Robb Tr.73; Vannoy Tr.284–85. App. 118-19, 122, 124-29, 35, 57-58, 68-69, 240, 324, 369, 573, 632-33.
[36] Caussin Tr.191-93; Beasley Tr.330; Cunningham Tr.244-45; Montague Tr.110-113; Vannoy Tr.283-84; Gonzalez Tr.271-72; Brandell Tr.145-47; Goff Tr.103-05; Higginbotham Tr.236–37; Vannoy Tr.284; Walser Tr.136; Robb Tr.74–76. App. 119-21, 34, 239-40, 526-29, 631-32, 368-69, 68-70, 326-28, 403-04, 632, 654, 574-76.

maintain required certifications and proficiency in fundamental tasks.[37]

37. Station Captains must perform physical fitness training on every shift. Captains, Lieutenants, technicians, and fire fighters are all subject to the same physical fitness requirements. Captains perform physical fitness training with the rest of the crew and are expected to engage in approximately 2 hours of physical fitness training per shift.[38]

38. Station Captains complete an annual performance evaluation ("evaluation report" or "ER") for some of the personnel assigned to their same shift and station. Lieutenants, like Captains, have the same authority to complete annual evaluation reports of subordinates, and do, in fact, complete the ERs for the fire fighters and technicians on their shift.[39]

39. Station Captains and Lieutenants complete evaluation reports once per year. Captains spend a total of only between 1 and 12 total hours per year filling out ERs.[40]

40. When completing ERs, Station Captains and Lieutenants follow parameters defined by the County to rate individuals.[41]

41. Neither Station Captains nor Lieutenants may give a negative rating on an ER without

---

[37] Caussin Tr.196; Goff Tr.103; Lange Tr.259–60; Morrison Tr.123–24; Robb Tr.73–76; Conrad Tr.45-46; Davis Tr.283; Gonzalez Tr.151; Higginbotham Tr.135-37; Beasley Tr.330.  App. 123, 326, 494-95, 546-47, 573-76, 208-09, 272, 358, 391-93, 34.

[38] Beasley Tr.329; Betz Tr.128; Cochrane Tr.243; Cunningham Tr.244; Davis Tr.271; Gonzalez Tr.270;  Jackson Tr.143; Johnson Tr.118-19; Lange Tr.227; Montague Tr.108; Morrison Tr.129; Vannoy Tr.285-86; Walser Tr.135-36; Fitness SOP (PX 62); Caussin Tr.312, 314-15; Lange Tr. 227. App. 33, 56.1, 193, 239, 264, 367, 422, 444-45, 481, 108, 552, 633-4, 653-4, 791-4, 165-7.

[39] ER SOP 02.05.01 (PX63); Caussin Tr.303, 335; Higginbotham Tr.230; Jackson Tr.142; Johnson Tr.117; Menton Tr.134–35, 143; Montague Tr.107–08; Morrison Tr.129; Walser Tr.132–33. App. 795-802, 163, 169, 401, 421, 443, 507-8, 513.1, 524-25, 552, 650-1.

[40] Beasley Tr.328–29(9 hrs);  Brandell Tr.281–82(8 hrs); Gonzalez Tr.268(4 hrs); Higginbotham Tr.230(10 hrs); Jackson Tr.142(5-6 hrs); Johnson Tr.116–17(6-8 hrs); Montague Tr.107(5-6 hrs); Vannoy Tr.283(10-12 hrs). App. 32-33, 75-76, 365, 401, 421, 442-43, 524, 631.

[41] PX 63; Beasley Tr.169–70. App. 795-802, 17-18.

advanced authorization from the Human Resources Department and Battalion Chief.[42]

42. When a Station Captain completes an evaluation report, it is reviewed by the Battalion Chief, who can change the rating and/or the comments.[43]

43. Station Captains, like all other Fire Department employees, are required to report observed disciplinary infractions. Station Captains follow the County's Standard Operating Procedures ("SOPs") and rules and regulations when reporting disciplinary infractions.[44]

44. Station Captains do not have the discretion to issue discipline; a Deputy Chief and/or Battalion Chief must approve all discipline before it is issued.[45]

45. Station Captains are not permitted to issue even verbal counseling, the lowest form of discipline, without approval by the Battalion Chief and Shift Deputy Chief.[46]

46. Station Captains do not determine the level of discipline given for an infraction; that is determined by a Battalion Chief or Deputy Chief.[47]

47. Suspensions, demotions, and terminations must be approved by the Fire Chief; a Captain cannot unilaterally approve a suspension, demotion, or termination.[48]

---

[42] Caussin Tr.342-43; Conrad Tr.153-55; Johnson Tr.61-62. App.170-71, 210-12, 436-37.

[43] Betz Tr.47–48; Montague Tr.42; Gonzalez Tr.182–84; Jackson Tr.158; Walser Tr.133–34; Morrison Tr.87–88; Robb Tr.186–87. App. 42-43, 517, 359-61, 432, 651-52, 541-42, 582-83.

[44] Rules and Reg's §§100.08, 300 (PX10) at 4; Disc. and Grievance Procedures (PX55); Beasley Tr.242–45, 259; Betz Tr.93-96, 109; Cunningham Tr.156–59; Davis Tr.226–27; Higginbotham Tr.186–87; Jackson Tr.68–69; Johnson Tr.69-70; Montague Tr.47-51; Walser Tr.75. App. 691-92, 788-90, 12-22, 24, 44-47, 52, 227-30, 257-58, 397-98, 418-19, 438-39, 518-22, 641.

[45] PX55 at PX 55-1; B-Shift Administrative and Operational Manual (PX7) at PX7-5; Battalion Chief's Handbook (PX8) at 17; Caussin Tr.374–75; Davis Tr.254-55; Jackson Tr.68-69; Gonzalez Tr.272; Higginbotham Tr.237; Jackson Tr.145; Johnson Tr.119; Lange Tr.228; Menton Tr.138; Montague Tr.115; Morrison Tr.135; Walser Tr.143–44. App. 788, 687-88, 689-90, 117-18, 259-60, 418-19, 369, 404, 423, 445, 482, 509, 530, 557, 656-57.

[46] PX55 at PX 55-1; PX7 at 7-5; PX8 at 8-17; Caussin Tr.380; Robb Tr.226–27; Lange Tr.228; Walser Tr.143–44, App. 788, 687-88, 689-90, 180, 590-91, 482, 656-57.

[47] Caussin Tr.377; Walser Tr.144–45, 151–54; Johnson Tr.69, App.179, 657-58, 661-64, 438.

[48] Caussin Tr.387. App.181.

48. Station Captains do not have the discretion to refuse to deliver discipline or to change the punishment an individual receives. If the Captain is ordered to issue discipline to a subordinate, the Captain must issue the discipline even if he disagrees with it.[49]

49. Station Captains cannot change a subordinate employee's work schedule or arrange for an employee to be transferred, do not assign overtime to off-duty fire fighters, do not approve leave, and do not set minimum staffing levels.[50]

50. Station Captains have no authority or responsibility to create a budget and do not have authority to purchase supplies or equipment for their station.[51]

51. Captain I shift supervisors have no authority or responsibility to update or disseminate station policies.[52]

### 2. EMS Captain IIs' Most Important Job Duty Is Emergency Response

52. EMS Captain IIs rescue victims of fire, crime and accidents. EMS Captain IIs must be licensed in basic and advanced life support skills. EMS Captain IIs regularly perform emergency medical services including taking a pulse, assessing vital signs, performing CPR, or controlling a patient's bleeding. Further, EMS Captain IIs perform Advanced Life Support

---

[49] Morrison Tr.52–53; Beasley Tr.258–64, 267–68; Betz Tr.105–10; Brandell Tr.98–100; Cunningham Tr.121–22, 263–65; Higginbotham Tr.187–88; Johnson Tr.73-74; Menton Tr.105–10; Montague Tr.47-49; Robb Tr.143-44, 156-58; Walser Tr.81; Morrison Tr.135,. App. 539-40, 23-31, 48-53, 63-65, 225-26, 247-49, 398-99, 440-41, 500-05, 518-20, 577-81, 642, 556.

[50] Caussin Tr.284–86, 292; Davis Tr.266-67; Goff Tr.102-03; Gonzalez Tr.267; Higginbotham Tr.229; Jackson Tr.141-42; Johnson Tr.116; Lange Tr.221; Menton Tr.133-34; Montague Tr.106; Vannoy Tr.273-74, 281–82; Walser Tr.132; Beasley Tr.328; Conrad Tr.189; Cunningham Tr.241–42; Morrison Tr.128-29; Betz Tr.125; Cochrane Tr.248;  Robb Tr.233–36. App. 159-62, 261-62, 325-26, 364, 400, 420-21, 442, 479, 506-07, 523, 621-22, 629-30, 650, 32, 213, 236-37, 551-52, 55, 196, 596-99.

[51] Caussin Tr.346, 351; Lange Tr.221; Betz Tr.125; Cochrane Tr.235; Cunningham Tr.257; Higginbotham Tr.236; Morrison Tr.134–35; Vannoy Tr.283; Walser Tr.131.  App. 172, 174, 479, 55, 192, 246, 403, 555-56, 631, 649.

[52] Davis Tr.270; Goff Tr.103; Higginbotham Tr.235-36, 242-43; Morrison Tr.129. App. 263, 326, 402-3, 408-9, 129.

(ALS) care, such as cardiac defibrillation, administering intravenous fluids and medication.[53]

53. The County dispatches EMS Captain IIs to accidents with injuries, people trapped, cardiac arrest, overdose, and hazardous materials incidents. EMS Captain IIs are obligated to provide patient care when medical care is needed.[54]

54. EMS Captain IIs have no discretion to refuse to respond to a call. When dispatched, an EMS Captain II stops everything he is doing and responds to the call for service.[55]

55. EMS Captain IIs respond to incidents in a vehicle that contains ALS equipment, including narcotics, the LUCAS chest compression device, oxygen, heart rate monitors, and intubation materials. EMS Captain IIs use this medication and equipment on the scene.[56]

56. EMS Captains IIs perform emergency medical and life-saving tasks with and alongside other BLS- and ALS-certified employees who are dispatched by defendant to the same calls.[57]

57. EMS Captain IIs are required to participate in training and classes on emergency response and to maintain emergency response certifications required by the County and the State.[58]

58. The FCFRD expects EMS Captain IIs to complete 2 hours of physical fitness training on every shift they work.[59]

59. EMS Captain IIs may complete an ER addendum for employees with ALS certification which assesses the employee's ALS abilities pursuant to guidelines established by Virginia and defendant. Otherwise, EMS Captain IIs have no responsibility to complete ERs.[60]

---

[53] Cunningham Tr.249–51; Gonzalez Tr.276–77. App.241-43
[54] Caussin Tr.242, 247. App.170, 173.
[55] Gonzalez Tr.273; 284–86. App.370, 378-80.
[56] Caussin Tr.243, 248; Cunningham Tr.250-52; Kingdon Tr.91-3. App.140, 142, 242-4, 466-8.
[57] Gonzalez Tr.274–76. App.371-73
[58] Kingdon Tr.22–25. App.459-62.
[59] Cunningham Tr.244; Gonzalez Tr.270. App. 239, 367.
[60] Gonzalez Tr.107–08, Kingdon Tr.40; Cunningham Tr.233–37. App.349-50, 463, 231-35.

60. EMS Captain IIs spend less than four hours per year on evaluation report addendums.[61]

61. EMS Captains IIs have no budgetary responsibility, do not have the authority to assign overtime to off duty fire fighters, do not approve leave, do not set minimum staffing levels, and do not write or disseminate station policies.[62]

62. EMS Captain IIs cannot issue discipline without receiving an order through the chain of command. EMS Captain IIs may participate in fact-finding "inquiries" related to medical issues, but do not make a final determination regarding the outcome of the inquiry.[63]

### 3. Captain I Safety Officers' Most Important Job Duty Is Emergency Response

63. Captain I Safety Officers are dispatched to fire and emergency scenes and respond in a vehicle equipped with lights and sirens.[64]

64. Although Safety Officers are generally not responsible for a specific unit or apparatus at a fire scene, they perform manual, hands-on work at fire and emergency medical scenes. Safety Officers continuously monitor the emergency operation to recognize hazards. For example, they carry monitors that alert them to gas leaks and monitor the structural integrity of collapsing and burning buildings to protect fire fighters' health and safety.[65]

65. Safety Officers apply applicable laws, standards, department polices, and other best practices when responding to fire and emergency scenes.[66]

66. When Safety Officers are dispatched to a structure fire, they are required to bring their

---

[61] Cunningham Tr.243 (half an hour); Gonzalez Tr.268–69 (max. of 4 hours). App. 238, 365-66.
[62] Caussin Tr.358-59; Gonzalez Tr.87, 267, 296-97; Kingdon Tr.89-90; Cunningham Tr.242. App.175-76, 348, 364, 383-84, 464-65, 237.
[63] Kingdon Tr.90, 93–98; Gonzalez Tr.211–12, 272, App. 465, 468-73, 362-63, 369.
[64] Dyer Tr.49. App.290.
[65] Davis Tr.286-93; Caussin Tr.249; Dyer Tr.44-5; Walser Tr.130. App.273-80, 143, 288-9, 648.
[66] Walser Tr.23, 125. App.640, 643.

PPE with them and don it at the scene.[67]

67. Safety Officers carry with them certain tools and equipment, such as gas meters, a radioactivity monitor, and air sampling monitors.[68]

68. Safety Officers report directly to the Incident Commander at an emergency scene, whether it is a Lieutenant, a Captain or above.[69]

69. Safety Officers do not have the discretion to refuse to go to a call to which they are dispatched. When dispatched, they stop everything they are doing and respond to the call.[70]

70. Safety Officers are required to remain in an alert and ready state at all times, even when not on an emergency scene.[71]

71. Safety Officers also inspect the defendant's fire stations, vehicles, and certain tools and equipment for safety concerns.[72]

72. Safety Officers are required to perform physical fitness training on every shift, and are expected to perform approximately two hours of physical fitness training per shift.[73]

73. Safety Officers do not supervise any other employees, do not issue discipline, do not approve leave or assign overtime, do not set minimum staffing levels, and do not write or disseminate station policies.[74]

74. Safety Officers do not create budgets, submit budget requests, or purchase any supplies.[75]

---

[67] Dyer Tr.43; Caussin Tr.254; Walser Tr.130. App. 43, 146, 648.
[68] Dyer Tr.49; Walser Tr.130–31. App. 290, 648-49.
[69] Thompson Tr.247–48; Walser Tr.22–23; Davis Tr.23–24. App.289.1-290, 639-40, 251-52.
[70] Thompson Tr.247–48; Walser Tr.127, 131. App. 611-12, 645.
[71] Dyer Tr.71-72. App.293-94.
[72] Dyer Tr.80–81. App.295-96.
[73] Dyer Tr.38; Davis Tr.282–83; Thompson Tr.246; Walser Tr.125. App. 286, 271-72, 610, 643.
[74] Dyer Tr.92, 94; Woodruff Tr.100; Caussin Tr.250; Thompson Tr.228-29, 241, 245–47; Walser Tr.126-129. App. 297-98, 673, 144, 604-05, 608-11, 644-47.
[75] Davis Tr.282; Thompson Tr.245, 248; Walser Tr.128, 131. App. 271, 609, 612, 646, 649.

75. Safety Officers participate in accident review boards when FCFRD vehicles are in accidents. Other officers and fire fighters or apparatus technicians also serve on such boards. The board meets either once per month or every other month. Together, the members of the accident review board will place the accident into a category; however, they do not determine what discipline is imposed based on that classification.

76. Safety Officers do not complete evaluation reports for any employees.[76]

### 4. The Captains Do Not Have the Authority to Hire, Fire or Promote

77. None of the Plaintiff Captains can hire or fire any other employees.[77]

78. None of the Plaintiff Captains have the authority to promote employees.[78]

79. Any occasional recommendations or suggestions plaintiffs may make are not given particular weight.[79]

### 5. Lieutenants Perform Many of the Same Job Duties as Captains

80. The County admits that Lieutenants are covered by the FLSA and are, therefore, paid time and one half overtime pay for all hours worked in excess of 212 in a 28–day work period, but maintains that Captains, who are not members of "senior staff," are exempt from the FLSA.[80]

81. Lieutenants perform many of the same tasks and job duties as Captains, both in the field and in the fire station. For example, Captains and Lieutenants are assigned to work with crews and pull hose, throw ladders, force entry, ventilate buildings, take blood pressure, and perform CPR. The County states that the reason the Captain position exists is to have an individual with the ability to direct the work of subordinates on emergency scenes. This work is done by

---

[76] Davis Tr.184-86; Thompson Tr.70-72; Dyer Tr.57–58. App.254-56, 601-03, 291-92.
[77] Caussin Tr.269; Woodruff Tr.220–22. App.158, 678-80.
[78] Woodruff Tr.221. App.679.
[79] Brandell Tr.295. App.83.
[80] Mundy Tr.37-38; Woodruff Tr.152-154; Caussin Tr.19. App.562-63, 675.1-677, 84.1.

the Captains while they themselves are also performing fire fighting activities. The only real difference between the Captains and Lieutenants is that the Captains perform minimal ancillary duties at the station such as creating a station "wish list," planning public relations safety programs, passing information up the chain of command, and arranging station tours.[81]

82. Officers assume responsibility on an incident scene according to Fire Department policy. Under that policy, the first engine officer will assume the initial incident command role when he arrives on the scene. That officer may be a Lieutenant or a Captain. When the second engine arrives, command is normally transferred to the second engine officer, who may be a Lieutenant or a Captain. Command is ultimately transferred to the Battalion Chief when the Battalion Chief arrives on the scene. Either a Lieutenant or a Captain may act as the incident commander until he or she is relieved by a Battalion Chief.[82]

83. Lieutenants, like Captains, complete evaluation reports of their subordinates.[83]

84. Lieutenants, like Captains, have an obligation to report disciplinary infractions, to follow the FCFRD's SOPs when doing so, and may also issue discipline if ordered to do so.[84]

85. The County allows Lieutenants and Captains to exchange shifts with one another. On these regular shift exchanges or when a lieutenant fills in for a Captain on leave, the

---

[81] Caussin Tr.26-27; Lange Tr.27, 256-57; Goff Tr.67–68; Beasley Tr.145–47; Higginbotham Tr.128-30; Robb Tr.209-11. App.87-88, 475, 492-93, 320-21, 13-15, 388-90, 584-86.

[82] Fire and Rescue Department of N. Va. at PLF 2962–76; Rural Water Supply Operations Manual, Roles and Responsibilities, at PLF 2203–08; Water Supply for Suburban and Rural Firefighting at PLF 2526–31; Aerotrain Emergency Respond Manual at PLF 2901-05; Johnson Tr.121, 141–49; Goff Tr.120-23, 130-34; Caussin Tr.22–23; Johnson Tr.121, 141–49; Jackson Tr.148–49, 154–58; Goff Tr.120–23, 130–34. App. 875-90, 855-61, 862-68, 869-74, 446, 450-57, 333-336, 340-44, 85-86, 446-57, 426-27, 428-32, 333-36, 340-44.

[83] Gonzalez Tr.269–70; Higginbotham Tr.251; Jackson Tr.142. App. 366-67, 412, 241.

[84] PX10 at PX 4; Lange Tr.244; Beasley Tr.242–45, 259; Betz Tr.93-96, 109; Cunningham Tr.156–59; Davis Tr.226–27; Higginbotham Tr.186–87; Jackson Tr.68–69; Johnson Tr.69-70; Montague Tr.47-51; Walser Tr.75; Goff Tr.51–54, 123-24. App.316-19, 336–37. App. 691-92, 490, 19-22, 24, 44-47, 52, 227-30, 257-58, 397-98, 418-19, 438-39, 518-22, 641, 51-54, 123-24.

Lieutenant performs the duties of the Station Captains.[85]

86. When a Lieutenant works in place of a Captain, he does not receive extra pay for working as a Captain, but will receive FLSA overtime pay if the shift he is working qualified him for overtime (*i.e.*, was for work hours in excess of 212 in a 28-day pay cycle).[86]

## III. STANDARD OF REVIEW

Rule 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has instructed that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)*.*

## IV. ANALYSIS

### A. <u>The FLSA Requires Employers to Pay Employees FLSA Overtime Pay for Hours Worked in Excess of the Overtime Threshold</u>

The FLSA requires employers to pay employees overtime pay at one-and one-half times the regular rate for all overtime hours worked. 29 U.S.C. §207. 29 U.S.C. §207(k) provides an exception to the general 40-hour overtime standard whereby employees engaged in fire protection activities must be paid overtime compensation for hours worked in excess of 212 in a 28-day work cycle. 29 C.F.R. §§553.210; 553.230(a). It is undisputed that the County has failed to pay the Captains overtime at the rate of one and one-half times their regular rate of pay for hours worked in excess of 212 hours in a 28-day period.

The County asserts as an affirmative defense to its failure to pay overtime that the

---

[85] Caussin Tr.149; Davis Tr.45; Gonzalez Tr.33-34, 294–95; Lange Tr.241. App. 105, 253, 346-47, 489.1

[86] Caussin Tr.142; Thompson Tr.234–35. App. 104, 606-07.

Captains are exempt from the FLSA as executive or administrative employees pursuant to 29 U.S.C. §213(a)(1). In assessing the County's defense it is important to recognize that FLSA exemptions are to be "narrowly construed against the employer asserting them" and their application limited to circumstances "plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *accord Darveau v. Detecon, Inc.*, 515 F.3d 334, 337–38 (4th Cir. 2008). Further, "[t]he employer bears the burden of proving it falls within an exemption [to the FLSA]." *United States DOL v. N.C. Growers Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004).

Significantly, in 2004, DOL implemented new regulations that restrict the exemptions in 29 U.S.C. §213(a)(1), and in doing so, enacted a ***specific*** regulation pertaining to the application of these exemptions to fire department employees. In the preamble, the Secretary explained:

> The current regulations do not explicitly address the exempt status of police officers, fire fighters, paramedics or EMTs. This silence in the current regulations has resulted in significant federal court litigation to determine whether such employees meet the requirements for exemption as executive, administrative or professional employees.
> . . . .
> [T]***he Department intends to make clear in these revisions to the Part 541 regulations that such . . . first responders are entitled to overtime pay***.

69 Fed. Reg. 22,122, at 22,129 (Apr. 23, 2004) (emphasis added) (App.909). Section 541.3(b), as adopted, explicitly provides that:

> The Section 13(a)(1) exemptions do not apply to ... fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and other similar employees, ***regardless of rank or pay level***, who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; ... or other similar work.

29 C.F.R. §541.3 (emphasis added). DOL clarified that:

> [First responders] do not qualify as exempt executive employees because their primary duty is not management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof as required under §541.100. ***Thus, for example, a police officer or fire fighter whose primary duty is to investigate***

*crimes or fight fires is not exempt under section 13(a)(1) of the Act merely because the police officer or fire fighter also directs the work of other employees in the conduct of an investigation or fighting a fire*.

*Id*. at (b)(2) (emphasis added). DOL further clarified that such first responders also do not qualify as exempt administrators because "their primary duty is not the performance of work directly related to the management or general business operations of the employer." *Id*. at (b)(3). Further, the preamble clarifies that they "cannot qualify as exempt under the highly compensated test." 69 Fed. Reg. at 22,129 (App.909).

As two appellate courts have found, an analysis of the exemption status of public safety supervisors, including the plaintiff Captains, is markedly different from an analysis of other supervisors who are not in the public safety field.[87]  In *Mullins v. City of New York*, 653 F.3d 104 (2d Cir. 2011), the Court applied the Section 541.3 first responder regulations and found that the sergeants' supervision of subordinate officers is part of their law enforcement work, and was therefore not management, and thus they were entitled to FLSA overtime. *Id*. at 116, 118. The Court's holding adopted DOL's interpretation of the first responder regulations submitted in an *Amicus Curiae* letter brief. *Id*. at 115. Similarly, in *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 829 (10th Cir. 2012), the Court adopted the Second Circuit's interpretation of the first

---

[87] Generally speaking, an employee is a bona fide executive only if: (1) he is "[c]ompensated on a salary basis at a rate of not less than $ 455 per week;" (2)  his "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;" (3) he "customarily and regularly directs the work of two or more other employees;" and (4) he "has the authority to hire or fire other employees" or his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. §541.100. An employee is exempt as a bona fide administrative employee only if:  he is (1) "[c]ompensated on a salary or fee basis at a rate of not less than $ 455 per week;" (2) his "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer;" and (3) his "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. §541.200.

responder regulations. *See also Barrows v. City of Chattanooga*, 944 F. Supp. 2d 596, 604 (E.D. Tenn. 2013) (fire captain not exempt because his primary duty was first response).

Here, the plaintiff Captains, along with their crews, risk their lives, safety, and health when responding to emergency calls from the community; they are emergency responders first and foremost. Ultimately, plaintiffs are responsible for running toward situations that most reasonable people run away from.[88] To do this, plaintiffs and their crew are "tasked with the responsibility for knowing every aspect of the operations of the rescue apparatus to which [they are] assigned and each specialized piece of equipment thereon." *Barrows*, 944 F. Supp. 2d at 604. They train together with their crew and push each other to be better fire fighters, so that when they are called to an emergency, they are all ready to be the first to answer. *Id.* (any managerial duties that the plaintiff performs "relate[] directly to his regular front line firefighting duties"); *Mullins*, 653 F.3d at 116. Simply put, the Captains are not exempt under either the executive or administrative exemption because their primary job duty is emergency response. It does not matter what rank the Captains hold, how much they are paid, or that they perform some ancillary ministerial duties. *See* 29 C.F.R. §541.3(b) (the "white collar" exemptions do not apply to fire fighters, "regardless of rank or pay level" because management is not their primary duty).

Under either the administrative or executive exemption, it is the primary job duty of the employee, and ***not*** his or her rank or pay level, which determines whether he is exempt. "'[P]rimary duty' means the principal, main, major or most important duty that the employee performs . . . . with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. §541.700(a). A primary job duty need not be the most time consuming duty an individual

---

[88]  Indeed, they are no less immune from on the job injuries than their fellow lieutenants and fire fighters who all earn FLSA overtime pay. Fact ¶23.

performs. 29 C.F.R. §541.700(b) ("Time alone . . . is not the sole test. . . ."). Instead, when determining an employee's primary job duty, the Court should consider, *inter alia*, the "relative importance of the exempt duties as compared with other types of duties," the "employee's relative freedom from direct supervision," and "the relationship between the employee's salary and the wages paid to other [non-exempt] employees..." 29 C.F.R. §541.700(a). Moreover, and importantly, in determining the primary job duty, the Court must follow DOL's clarification of those regulations as they apply specifically to first responders like the Captains. Unlike other employees, any supervision and direction of subordinates that is related to fire fighting is ***excluded*** from the primary duty calculus. 29 C.F.R. §541.3(b)(2) ("[A] fire fighter whose primary duty is to . . . fight fires is not exempt under section 13(a)(1) merely because the . . . fire fighter also directs the work of other employees in the conduct of . . . fighting a fire.").[89]

In a case with nearly identical facts to those at issue here, the court found that the fire captain was not exempt under the FLSA because his primary job duty was first response ("preventing, controlling, and extinguishing fires, rescuing fire victims, conducting inspections for violations of law, and preparing investigative reports"), not management or administrative duties. *Barrows v. City of Chattanooga*, 944 F. Supp. 2d 596, 604 (E.D. Tenn. 2013). In *Barrows*, the captain was the highest ranking officer at the fire station, supervised lower-ranking officers, reported directly to a battalion chief, was assigned to an apparatus, and interacted with his subordinates as a team. *Id*. at 598-99. He and the rest of his team spent more time in the station than in the field as the nature of their jobs requires them to wait for calls. *Id*. at 600.

---

[89] As with all agency rules, regulations promulgated by the DOL interpreting the FLSA ought to be given *Chevron* deference. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984). Further, the Secretary's *amicus* brief is entitled to "controlling" *Auer* deference. *Mullins*, 653 F.3d at 114 (citing *Auer v. Robbins*, 519 U.S. 452 (1997)). This *amicus* letter is included at App. 895–907.

When dispatched, the *Barrows* captain rode on the apparatus with other members of the team, participated in fire fighting and emergency care on the scene, and was generally relieved of control of the scene by a battalion chief. *Id*. In addition, the *Barrows* captain had no budgeting responsibility, and could only create a "wish list" of items for the fire station. *Id*. at 600-01. In finding that emergency response was the captain's primary job duty, the court noted that any managerial duties that the fire captain had did not relate to management of the entire enterprise and were mainly ministerial in nature. *Id.* at 604. The court further found that the captain's responsibilities of "conducting training sessions," "assuring a constant state of preparedness," and "evaluating staff," "relate[] directly to his regular front line firefighting duties" and are therefore ***not managerial*** under the regulations. *Id.* at 599, 604. Moreover, the captain was not "free from supervision"— he could merely "report infractions to the battalion chief for disciplinary action" and "had no control over budgeting, hiring firing, promotions, rates of pay, or number of hours worked by his subordinates." *Id*. at 604. Based on these job duties, the *Barrows* court found that the defendant city failed to establish that the fire captain qualified for either the administrative or executive exemption. *Id*. at 605. Notably, the job duties and responsibilities of the *Barrows* captain are virtually indistinguishable from those of the Captains in this case.

While running into burning buildings or performing CPR may not constitute the largest percentage of the plaintiffs' time, as in *Barrows*, this is due to the nature of fire fighting:

> The nature of Plaintiff's job, as is the nature of the job of every front-line fire fighter, is generally to wait. Any given day for a fire fighter may consist of extended periods of boredom, ***punctuated by periods of urgency and moments of terror***. . . . Simply put, Plaintiff and his subordinates were tasked with the responsibility of interrupting whatever other task or activity they may have been involved in to respond to a fire or emergency call. Thus ... Plaintiff's firefighting duties ... were clearly the most important duties that he performed.

*Id*. at 604–05 (emphasis supplied). Here, to find that the primary job duty of the Captains is anything other than emergency response is to ignore the "periods of urgency and moments of terror" that characterize plaintiffs' jobs. While Captains in this case might perform some other ministerial tasks, including directing work, they are performed entirely within the context of their duties as first responders, and therefore do not qualify plaintiffs for an exemption from the FLSA, as was the case in *Barrows*. *See also Mullins*, 653 F.3d at 116 (noting that "when [the police sergeant plaintiffs'] supervisory activities are viewed within the context of the first responder regulation as interpreted by the Secretary [of Labor], it becomes apparent that, because these activities form part of sergeants' primary field law enforcement duties, such supervision is not to be deemed 'management'"). When certain supervisory tasks, such as directing work, are performed by individuals who are not first responders, they may be considered "management." *Id.* Here, however, because those tasks are performed by plaintiffs in conjunction with and in support of their responsibility for emergency response, such tasks do not qualify plaintiffs as exempt executives or administrators.

### 1. Station Captains' Primary Job Duty Is Emergency Response

The primary job duty of the Station Captains is preventing, controlling, or extinguishing fires and rescuing fire and accident victims. *See* 29 C.F.R. §541.3(b)(1) Like the non-exempt sergeants in *Mullins*, and non-exempt fire captain in *Barrows*, Station Captains are lead fire fighters in the fire stations, performing hands-on emergency response. *See* Facts ¶¶22–42; *see also Mullins*, 653 F.3d at 118–19 ("[T]he principal benefit that sergeants confer to the NYPD is their performance of law enforcement duties in the field and concomitant supervision of lower-ranking officers while performing such duties."). In providing this benefit to the County, Station Captains are without discretion as to whether to respond to calls. They ride the engine with their crew and respond to the same fire and emergency calls as their crew. Facts ¶¶23–24, 30. While

Station Captains may not spend the majority of their 24-hour shift engaged in fire or medical emergency response, *they spend exactly the same amount of time during their 24-hour shift engaging in fire and medical emergency response as all other members of their crew*. Facts ¶23. Thus, they "engage in the same front-line activities as their subordinates on a daily basis." *Maestas*, 664 F.3d at 829.

Station Captains are, fundamentally, "tasked with the responsibility of interrupting whatever other task or activity they may have been involved in to respond to a fire or emergency call." *Barrows*, 944 F. Supp. 2d at 605. No matter what the they are doing — whether it be eating, training, completing reports — when they are dispatched, they drop whatever they are doing and immediately respond with the crew. Facts ¶¶29–31.

Once Station Captains arrive on the scene, they perform hands-on fire suppression work alongside their crew. Station Captains draw on their knowledge of fire suppression and emergency medical care to control or extinguish fires (Fact ¶27) or save the lives of citizens in medical distress (Facts ¶28) while they simultaneously direct the operations of their crew. Station Captains, like other members of their crew, wear personal protective equipment ("PPE"). Facts ¶¶32–33. To prepare for their dangerous job in the field, Station Captains train alongside their crew. Facts ¶¶34–37. Indeed, nearly every moment of the Station Captain's day, just like the subordinates in their stations, is dedicated either to waiting for a call, responding to a call, or preparing to respond to a call. Responding to calls for emergency service is the most important thing that the Station Captains do and, therefore, it is their primary job duty.

**2. EMS Captain IIs' Primary Job Duty Is Emergency Response**

The EMS Captain IIs' primary job duty is responding to emergency calls. The first responder regulation lists among the duties covered by the regulation "rescuing fire, crime or accident victims . . . or other similar work." 29 C.F.R. §541.3(b)(1). Among the covered

positions are "paramedics, emergency medical technicians, (and) ambulance personnel." *Id.*

EMS Captain IIs perform these non-exempt duties by responding to emergency scenes and engaging in hands-on patient care and emergency response. *See* Facts ¶¶52–61. EMS Captain IIs are required to be licensed in both basic and advanced life support. Facts ¶52. The defendant dispatches EMS Captain IIs to life-threatening accidents, and the EMS Captain IIs have no authority to refuse to respond to calls. Facts ¶¶53–54. When an EMS Captain II is dispatched to an emergency, he must drop whatever else he is doing and respond. Facts ¶54. *Nothing* takes priority over responding to an emergency to which he has been dispatched.

EMS Captain IIs respond to emergency scenes in vehicles containing advanced life support equipment, including narcotics, a chest compression device, oxygen, heart rate monitors, and intubation materials. Facts ¶55. When responding to an emergency, EMS Captain IIs regularly, alongside other BLS and ALS certified employees who are dispatched to the calls, perform emergency medical services tasks such as taking a pulse, assessing vital signs, performing CPR, and controlling a patient's bleeding. Facts ¶¶52, 56. EMS Captain IIs are also tasked with performing hands-on advanced life support. *Id.*

The most important job an EMS Captain II does is respond to emergency scenes and save the lives of citizens. 29 C.F.R. §541.700(a). EMS Captain IIs put these first response duties above all other duties. The DOL intended that individuals who perform first-line medical care be covered by the FLSA under the first responder regulation. *See* 69 Fed. Reg. at 22129 ("[T]he Department intends to make clear in these revisions to the Part 541 regulations ... *paramedics, EMTs* and other first responders are entitled to overtime pay") (emphasis supplied) (App.909). Hence, the EMS Captain IIs are entitled to the protections of the FLSA.

### 3. Safety Officers' Primary Job Duty Is Emergency Response

The Safety Officers' primary job duty is to respond to fire and emergency scenes (Facts

¶¶63-76), and thus neither the administrative nor the executive exemptions apply. The regulation notes that "preventing, controlling or extinguishing fires of any type . . . or other similar work" are first response activities, and that individuals who perform these activities are entitled to FLSA non-exempt. 29 C.F.R. §541.3(b)(1). Safety Officers are tasked with and regularly perform these duties and they do not supervise any other employees.

Safety Officers are dispatched to fire scenes to monitor emergency operations and to recognize health and safety hazards. Facts ¶64. They are charged with "controlling" the fire by, for example, monitoring risks of a gas leaks and the structural integrity of a building to ensure fire fighters' health and safety. *Id*. Just like fire fighters and Fire Captains, Safety Officers wear PPE while at an emergency scene and carry tools and other fire fighting equipment. Facts ¶¶66–67. Further, Safety Officers have no discretion to refuse to go to a call to which they are dispatched. Facts ¶69. Once a Safety Officer is dispatched, the Safety Officer must stop doing whatever else he is going, no matter the task, and respond to the emergency call. *Id*.

Hence, the Safety Officers' "principal, main, major or most important duty," the duty that takes precedence over all other activities, is responding to emergency calls to control and extinguish fires. 29 C.F.R. §541.700(a). Safety Officers ensure that the fire or emergency scene remains under control. Just like the *Barrows* captain, Safety Officers are tasked to wait and then are required to respond to emergencies, working on the front lines to ensure that other officers, members of the public, and the community remain safe. 944 F. Supp. 2d at 604–05; Facts ¶70.

**B. <u>Station Captains Are Not Exempt From the FLSA</u>**

The County claims that Station Captains are exempt executives. Woodruff Tr.80-83, 92-93, 109, App.911–16, 923.To avail itself of this exemption, the County bears the burden of proving that their "primary duty is management of the enterprise in which the employee is employed." 29 C.F.R. §541.100(a)(2). Station Captains' primary job duty is not management; it

is emergency response.

An additional and independent reason that the County cannot meet its burden of proving the Captains are exempt is that Captains do not "ha[ve] the authority to hire or fire other employees" and their "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are [not] given particular weight." 29 C.F.R. §541.100(a)(4); Facts ¶¶77–79. Like *Barrows* captain, Station Captains here are not "free from direct supervision" and instead "answer[] directly to the battalion chief" and others higher in the chain of command. *Barrows*, 944 F. Supp 2d at 604. For example, suspensions, demotions and terminations must be approved by the Fire Chief. Facts ¶47. Station Captains merely report disciplinary infractions, as all defendant's employees are required to do. Facts ¶43; *Barrows*, 944 F. Supp 2d at 604 ("Plaintiff did not have authority to formally discipline his employees, but rather, had to report infractions to the battalion chief for disciplinary action."). Station Captains are not permitted to issue even a verbal counseling, the lowest form of discipline, without approval by the Battalion Chief and Shift Deputy Chief. Facts ¶45. Further, the Battalion Chief and/or Human Resources must approve the ratings that Stations Captains give their employees on evaluation forms, and may change those ratings if they choose. Facts ¶41, 44. Indeed, "an employee who merely carries out the orders of a superior to effectuate a change of status is not performing exempt executive duties." *Bacon v. Eaton Corp.*, 2014 U.S. App .LEXIS 8375, at *9 (6th Cir. 2014). The Station Captains here, whose very limited "managerial" tasks involve following orders from those above them in the chain of command, are not exempt executives.

### C. **EMS Captain IIs Are Not Exempt From the FLSA**

Defendant alleges that EMS Captain IIs are FLSA exempt through a combination of the executive and administrative exemptions. Woodruff Tr.109-10, App.923–24. Neither exemption applies because an EMS Captain IIs' primary job duty is emergency response.

Further, EMS Captain IIs do not meet the fourth prong of the executive exemption, which requires that they have the authority to hire or fire employees, or that their "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. §541.100(a)(4). EMS Captain IIs have no authority to hire or fire other employees. Facts ¶¶77–78. In addition, EMS Captain IIs have no input in the promotion or firing process for other employees. Facts ¶¶78-80. Like the Station Captains and the *Barrows* captain, EMS Captain IIs do little more than implement decisions made by higher ranking officers. Thus, EMS Captain IIs cannot be exempt executives.

EMS Captain IIs are not exempt "administrators" because their primary job duty is ***not*** the performance of office or non-manual work. EMS Captain IIs are dispatched regularly to emergency medical calls, where they perform hands-on patient care alongside EMTs and paramedics. Facts ¶52–56. This work — e.g., chest compressions, administration of IV medication, and cardiac defibrillation — cannot be characterized as "non-manual." Facts ¶52. EMS Captain IIs meet neither the administrative nor executive exemptions to the FLSA.

### D. Safety Officers Are Not Exempt From the FLSA

Defendant alleges that Safety Officers are FLSA exempt due to a combination of the executive and administrative exemptions. Woodruff Depo. Tr.100-05, App.917–22. Because Safety Officers' primary job duty is emergency response, they are not exempt.

Additionally, Safety Officers do not meet the four-part test for an exempt executive. The County admits that Safety Officers do not supervise any other employees. Facts ¶¶73, 76. Further, Safety Officers do not have the authority to hire or fire employees and, in fact, do not even complete any evaluations of other employees. Facts ¶75. Because Safety Officers do not have management as their primary job duty, do not supervise other employees, and do not have the authority to hire or fire, they cannot meet the executive exemption test. *See* 29 C.F.R.

§541.100.

Further, the Safety Officers do not meet the test for an FLSA-exempt administrative

position. *See* 29 C.F.R. §541.200. The DOL's regulations explicitly state that employees in

positions such as Safety Officers are not covered by the administrative exemption:

> Public sector inspectors or investigators of various types, such as fire prevention or
> ***safety*** . . . and similar employees, generally do not meet the duties requirements for the
> administrative exemption because ***their work typically does not involve work directly***
> ***related to the management or general business operations of the employer***. Such
> employees also do not qualify for the administrative exemption because ***their work***
> ***involves the use of skills and technical abilities in gathering factual information,***
> ***applying known standards or prescribed procedures, determining which procedure to***
> ***follow, or determining whether prescribed standards or criteria are met***.

29 C.F.R. §541.203(j) (emphasis supplied).

Public sector safety employees such as plaintiff Safety Officers do not meet the

administrative exemption test because their work does not directly relate to the general business

operations of the employer and lacks the requisite exercise of discretion. Safety Officers utilize

equipment such as gas meters, radioactivity meters, and air sampling monitors to apply known

safety standards while at an emergency scene. Facts ¶67. Safety Officers use their fire fighting

skills and these tools to monitor emergency scenes to ensure compliance with established safety

standards. Facts ¶64. They also inspect equipment, PPE, and other tools for general compliance

with recognized safety standards. Facts ¶71. Finally, Safety Officers perform other safety related

investigations when they are not responding to emergencies. Facts ¶75. These safety

investigations include participation by lower ranking fire fighters. *Id*. In these investigations,

Safety Officers contribute their knowledge regarding safety matters; however, they do not have

decision-making authority. *Id*. All of these tasks involve the "gathering [of] factual information,

appl[ication] of known [safety] standards or prescribed procedures," and the "determin[ation]

[of] whether prescribed standards or criteria are met." See 29 C.F.R. §541.203(j); *see also*

*Mullins*, 653 F.3d at 109 (finding that police sergeants were not exempt despite the fact that their duties included completing numerous reports, including "'unusual occurrence reports,' which 'provide the written details of a significant or unusual occurrence,' as well as "instructing police officers on proper procedures" and "monitoring their use of proper equipment") (citations omitted). Accordingly, Safety Officers cannot be exempt administrators.

Further, the Safety Officers do not exercise the type of discretion and independent judgment required by the third prong of the administrative exemption. Safety Officers are supervised at emergency scenes by the incident commander. Facts ¶68; *see Zuber v. Apc Natchiq, Inc.*, 144 Fed. Appx. 657, 658 (9th Cir. 2005) (holding that a "safety specialist" who was supervised on scene and applied "established standards" was FLSA non-exempt). Like the Station Captains and EMS Captain IIs, and the *Barrows* captain, Safety Officers report directly to a superior officer who has control over their activities.

## V. CONCLUSION

For the reasons set forth above, plaintiffs respectfully request that the Court grant their motion for summary judgment with respect to defendant's liability. If this motion is granted, plaintiffs request a reasonable period of time to reach agreement with the defendant regarding the calculation of FLSA back pay due to the plaintiffs.


Dated:  August 8, 2014                    Respectfully submitted,

                                          /s/ Molly A. Elkin
                                          Molly A. Elkin (Va. Bar No. 40967)
                                          Sara L. Faulman
                                          Robin S. Burroughs
                                          WOODLEY & McGILLIVARY
                                          1101 Vermont Avenue, N.W.
                                          Suite 1000
                                          Washington, DC  20005
                                          Phone:  (202) 833-8855

mae@wmlaborlaw.com
slf@wmlaborlaw.com
rsb@wmlaborlaw.com

*Counsel for Plaintiffs*