# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | | |
|---|---|---|
| GERARD MORRISON, et al., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:14cv5 |
| | ) | |
| vs. | ) | Judge Hilton |
| | ) | Magistrate Judge Anderson |
| COUNTY OF FAIRFAX, VA., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## <u>PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF DEFENDANT'S LIABILITY FOR ITS FAILURE TO PAY FAIR LABOR STANDARDS ACT OVERTIME PAY TO ITS FIRE CAPTAINS</u>

Molly A. Elkin (Va. Bar No. 40967)
Sara L. Faulman
Robin S. Burroughs
WOODLEY & McGILLIVARY LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC  20005
Phone:  (202) 833-8855
mae@wmlaborlaw.com
slf@wmlaborlaw.com
rsb@wmlaborlaw.com

September 19, 2014                    *Counsel for Plaintiffs*

# TABLE OF CONTENTS

Table of Authorities...................................................................................................................ii

I.    INTRODUCTION.................................................................................................... 1

II.   ANALYSIS ............................................................................................................. 2

   A.   Based on the Undisputed Facts, Plaintiffs are Entitled to Summary Judgment......... 2

   B.   Defendant Relies Too Heavily on its Position Descriptions While Ignoring the Duties
        Actually Performed by the Captains.............................................................. 4

   C.   This Court Should Grant Summary Judgment As To All Plaintiffs .......................... 6

   D.   All Plaintiff Captains Are Non-Exempt Because Their Primary Job Duty is First-
        Line Emergency Response ........................................................................ 6

   E.   Applicable Law Supports Plaintiffs' Interpretation of the First Responder
        Regulations ...................................................................................... 9

   F.   Station Captains Are Not Exempt Executives............................................. 12

   G.   Station Captains' Primary Duty is Emergency Response and Fire Fighting ........... 14

   H.   EMS Captain IIs and Safety Officers Are Not Exempt Administrators .................. 18

III.  CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

SUPREME COURT CASES

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960). ................................................................. 20

CIRCUIT COURT CASES

*Ale v. TVA*, 269 F.3d 680 (6th Cir. 2001) ........................................................................ 5

*Allen v. Coil Tubing Servs., L.L.C.*,755 F.3d 279 (5th Cir. 2014) ................................. 5

*Dalheim v. KDFW–T V*, 918 F.2d 1220 (5th Cir. 1990) ................................................. 15

*Department of Labor v. City of Sapulpa, Oklahoma*, 30 F.3d 1285 (10th Cir. 1994) ........... 10, 11

*Hartman v. Arlington County,* 720 F. Supp. 1227 (E.D. Va. 1989), *aff'd* 903 F.2d 290 (4th Cir.

    1990) ........................................................................................................................ 10

*Morgan v. Family Dollar Stores*, 551 F.3d 1233 (11th Cir. 2008) ............................... 17

*Mullins v. City of New York*, 653 F.3d 104 (2d Cir. 2011) ..................................... passim

*Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394 (6th Cir. 2004) ................................. 5

*Smith v. Jackson*, 954 F.2d 296 (5th Cir. 1992) ...................................................... 10, 16

*Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446 (4th Cir. 2004) ................................... 5

DISTRICT COURT CASES

*Barrows v. City of Chattanooga*, 944 F. Supp. 2d 596  (E.D. Tenn. 2013) ................ 9, 10, 13, 14

*Benavides v. City of Austin*, 2013 U.S. Dist. LEXIS 87648 (W.D. Tex. June 20, 2013) ............. 11

*Ferrell v. Gwinnett County Bd. of Educ.*, 481 F. Supp. 2d 1338 (N.D. Ga. 2007) ...................... 19

*Hickton v. Rnter. Rent-A-Car Co. (In re Enter. Rent-A-Car Wage & Hour Empl. Practices*

    *Litig.)*, 2012 U.S. Dist. LEXIS 130694 (W.D. Pa. Sept. 13, 2012) ......................... 16

*Johnston v. Robert Bosch Tool Corp.*, 2008 U.S. Dist. LEXIS 80053 (W.D. Ky. Oct. 6, 2008) ... 5

ii

*Martinez v. Refinery Terminal Fire Co.*, 2014 U.S. Dist. LEXIS 18244 (S.D. Tex. Feb. 13, 2014) ...................................................................................................................... 11

*Masters v. Huntington,* 800 F. Supp. 363 (S.D. W.Va. 1992) ..................................................... 11

<u>R</u><small>EGULATIONS</small>

29 C.F.R. § 541.3 ............................................................................................... 7, 8, 9, 12

29 C.F.R. § 541.100 ................................................................................................ 12, 13

29 C.F.R. § 541.200 .................................................................................................... 18

29 C.F.R. § 541.201 .................................................................................................... 19

29 C.F.R. § 541.601 .................................................................................................... 12

29 C.F.R. § 541.700 ................................................................................................ 12, 15

<u>O</u><small>THER</small> <u>A</u><small>UTHORITIES</small>

69 Fed. Reg. 22,122 (Apr. 23, 2004) ............................................................... 10, 11, 12

## I.    INTRODUCTION

Defendant attempts to muddy the waters by identifying a litany of secondary and tertiary tasks that are ***occasionally*** performed by the Captains. There is one undisputed overarching fact that the defendant cannot escape, however: the Captains' ***primary*** job duty is ***first response***. Their most important job — indeed, the very reason that defendant hires them as Captains — is to lead other first responders into emergency situations to quell danger by directing their units on a fire scene, to rescue accident victims, and to fight blazing fires.

While the Captains may perform other tasks during their 24-hour shifts while they are waiting to perform their primary job duty of first response, these duties are either concomitant with fire fighting duties, or entirely ministerial.  The fire fighting-related duties performed at the station, such as physical fitness and emergency response training, fall in the First Responder column of the equation and, as such, are FLSA non-exempt under the Department of Labor's (DOL) controlling regulations.  The ministerial duties, such as reviewing reports or completing once-a-year performance evaluations (which are reviewed and approved by higher authorities), or issuing the extremely rare disciplinary action letter (after being authorized or ordered to do so by higher authorities) are not, separately or together, the Captains' primary job duty.

Instead, it is undisputed that first and foremost, Captains are tasked by the defendant to respond to ***every*** emergency call with their unit when the unit is dispatched.  The Captains cannot choose to stay behind at the station to complete a performance evaluation or to make edits to a disciplinary action letter. Doing so would, understandably, be grounds for discipline and, moreover, would never even occur to the Captains, who all know that the ***essence*** of their job is to head out with their team to wherever the danger lay within Fairfax County.

No matter how hard defendant tries to bury the Captains under paperwork and performance appraisals, the undisputed fact remains that station Captains are first responders —

not second or third responders, but *first* responders — on the truck with their crew headed into harm's way.  Likewise, the Safety Officers and EMS supervisors are first responders tasked with responding to emergencies and providing care and assistance on emergency scenes. In 2004, DOL proclaimed that these first responders must be paid overtime pay for this brave and daunting front-line emergency work because such work is neither executive nor administrative in nature.  For these reasons, and based on the arguments set forth below and in previous summary judgment papers, plaintiffs respectfully request that summary judgment be entered in their favor.

## II.     ANALYSIS

### A.     <u>Based on the Undisputed Facts, Plaintiffs are Entitled to Summary Judgment</u>

It is undisputed that the Station Captains are assigned by the defendant to ride on emergency response apparatus, typically a fire engine or an ambulance. Plfs.' Statement of Undisputed Material Facts, DE 106, and Def.'s Counter-statement of Disputed Facts, DE 122 ("Facts"), at ¶23. When that apparatus is dispatched, the Captains, along with other crew members assigned to the same apparatus, *must* respond. Facts ¶23, 54, 69.[1] The Captains, as well as their crews, must be ready to respond at all times. Facts ¶29, 54, 70. Thankfully, there are not enough emergency calls to be constantly dispatching every unit that the defendant employs. *See* Facts ¶¶25–26. Thus, much of a fire fighter or paramedic's job involves waiting and preparing, through training and physical fitness, for the next alarm. Facts ¶¶34–37.

While on emergency scenes, Captains perform hands-on first response activities. This is evidenced in many ways. Depending on the emergency, Station Captains (Captain I shift supervisors and Captain II station commanders) may run hose into burning buildings, search

---

[1] Defendant's interpretation of Caussin's testimony, *see* DE 122, Def.'s Response to Fact ¶30, is misleading. As Caussin testified, Captains must respond unless, for example, the appartatus breaks and must be taken out of service. Caussin Dep. 151–54 (App. 1066-69).

buildings for victims, administer CPR, assess vital signs, and carry victims away from danger. Facts ¶¶27–28. EMS Captain IIs must be licensed in advanced life support (ALS), because they are expected to use, and do use, their ALS skills, including cardiac defibrillation and administering intravenous fluids or medication, when they are dispatched. Facts ¶¶52–53, 55–56. Safety Officers, when dispatched, will monitor incident scenes with specialized tools to assist in controlling the fire and ensuring the safe extinguishment of the blaze. Facts ¶¶64–67. These are not tasks that the Captains only occasionally perform. Instead, they are performed virtually every shift by every Captain in this case. Captains are part of the defendant's "minimum staffing" complement; the Captains' apparatus cannot go out without the Captain. Facts ¶23. Further, in performing their jobs, Captains sustain job-related injuries. Facts ¶21. While the parties may dispute the importance of these first response activities relative to plaintiffs' other duties, there is no dispute that plaintiffs actually regularly perform these tasks, shift after shift.

When not responding to calls, plaintiffs perform other tasks, like completing annual or semi-annual evaluations of lower-ranking employees, filling out or reviewing reports related to the calls they ran, or serving on boards and special committees. Facts ¶¶38, 59, 75. However, all employees, no matter their rank, participate in ancillary activities when they are not running calls. Facts ¶¶81, 83, 84. Moreover, these tasks are heavily supervised (Facts ¶¶42, 49, 50) and take up very little of plaintiffs' time (Facts ¶¶39, 60). Of plaintiffs' regularly scheduled 2,912 hours per year, Captains spend a maximum of 12 hours per year (0.4% of their time) completing performance evaluations (Facts ¶39) and a maximum of 3 hours (0.1% of their time) issuing

discipline.[2] Captain IIs, the only category of Captains who deal with station wish lists and station policies, report spending less than 4 hours per year (0.1% of their time) creating wish lists and less than 5 hours per year (0.2% of their time) updating station policies.[3] Fundamentally, a day in a fire station does not rise and fall on preparing evaluations and serving on committees. It revolves around the "tones" — the signal that prompts plaintiffs to stop whatever they are doing, jump in the ambulance or fire engine, and race to help citizens. *See* Facts ¶¶29, 54, 70.

The law asks this Court to identify the Captains' ***primary*** job duty. This analysis does not rest on duties that the Captains occasionally perform, or that they may do if the circumstance arises. *See, e.g.*, DE 122, Def. Response to Fact ¶24 (noting that plaintiffs may "fill in" for a higher ranked position only if they are qualified). The reason that plaintiffs are employed by the defendant is to serve the fire department's primary mission of protecting the lives, property, and environment of Fairfax County by responding to calls for emergency assistance. *See* Facts ¶1. If defendant is going to deny the Captains their hard-earned overtime pay, then defendant must be held to its burden to show that the Captains' primary job duty is management or non-manual administrative work. On the undisputed facts, defendant cannot meet its burden.

 **B.** **<u>Defendant Relies Too Heavily on its Position Descriptions While Ignoring the Duties Actually Performed by the Captains</u>**

  Throughout its opposition, and in its own motion for summary judgment, the defendant calls on its position descriptions and class specifications as evidence of plaintiffs' job duties. However, these generalized descriptions offer very little when they are compared with plaintiffs'

---

[2] Higginbotham Dep. 237 (App. 1079); Jackson Dep. 145 (App. 1085); Johnson Depo.119 (App. 1092); Lange Dep. 229 (App. 1103); Montague Dep. 115 (App. 1105); Morrison Dep. 136 (App. 1108); Vannoy Dep. 286 (App. 1113).

[3] Davis Dep. 270 (App. 1073); Goff Dep. 103 (App. 1075); Higginbotham Dep. 235-36, 242-43 (App. 1077-78, 1080-81); Morrison Dep. 129 (App. 1107); Betz Dep. 121 (App. 1061); Brandell Dep. 279-80 (App. 1063-64); Cochrane Dep. 242 (App. 1071); Jackson Dep. 142 (App. 1083), 143 (App. 1084); Johnson Dep. 117–18 (App. 1090-91); Walser Dep. 134–35 (App. 1115-16).

own testimony. Defendant has therefore not produced evidence sufficient to meet its burden to demonstrate that the plaintiff Captains are exempt.

The position descriptions, class specifications, and even plaintiffs' own resumes should not distract from the *actual activities* plaintiffs performed. *Ale v. TVA*, 269 F.3d 680, 688-89 (6th Cir. 2001) ("[C]ourts must focus on the actual activities of the employee in order [to] determine whether or not he is exempt from the FLSA's overtime regulations."); *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 452-53 (4th Cir. 2004) (same, citing *Ale*, and refusing to place great weight on the plaintiffs' job title); *Johnston v. Robert Bosch Tool Corp.*, 2008 U.S. Dist. LEXIS 80053 at *66 (W.D. Ky. Oct. 6, 2008) ("The focus more properly falls upon evidence regarding the actual day-to-day activities of the employee rather than more general job descriptions contained in resumes, position descriptions and performance evaluations."); *see also Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 401 (6th Cir. 2004) ("[R]esumes may not provide the most accurate picture of an employee's job because resumes are typically designed to enhance the employee's duties and responsibilities in order to obtain a job.") (citing *Ale v. TVA*, 269 F.3d at 689 n.2).

Here, the defendant's job specifications and position descriptions provide, at best, a misleading representation of plaintiffs' jobs. *See Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 305 (5th Cir. 2014) (recognizing that an employee's job description "may not reflect the realities of the job"). Plaintiffs have testified that the duties they perform do not necessarily align with a common-sense read of the specification itself. *See, e.g.*, Johnson Dep. 26–28, 128–34, (App. 1087-89, 1093-99); DE 123 ¶¶11, 14, 17. Plaintiffs' deposition testimony regarding their job duties provides the "detailed window" into plaintiffs' day-to-day activities that the Court requires to determine whether summary judgment is appropriate. *Schaefer*, 358 F.3d at 401.

**C.**     <u>**This Court Should Grant Summary Judgment As To All Plaintiffs**</u>

Defendant argues that this Court should limit its determination to the 21 discovery plaintiffs. DE 122 at 18.  The Court should not accept defendant's invitation. All plaintiff Captains in each of the four groups share the same job responsibilities as other Captains in the group and are considered interchangeable by the defendant. DE 106 ¶¶15–18. Defendant's apparent "disputes" regarding Station Captains and EMS Captains are merely an attempt to revive its long-dead argument that it is entitled to individualized discovery.[4] *See, e.g.*, Order Affirming Mag. Judge's March 21, 2014 and April 4, 2014 Rulings Regarding Representative Discovery, DE 75. This argument has been previously rejected by this Court and should be rejected again. Moreover, defendant has admitted that all Shift Supervisors and Station Commanders are interchangeable in their respective positions between stations and shifts (Woodruff Dep. 188 (App. 674)), and that EMS Captain IIs likewise perform the same duties and have the same authority regardless of their geographic assignment (Caussin Dep. 94–95 (App. 97–98)). Notably, the defendant has not made any claim that the 21 plaintiffs differ in any significant respect from the other plaintiffs. Thus, the Court should grant plaintiffs' motion as to *all* plaintiffs in this case, and not confine its decision to the 21 representative plaintiffs chosen by both parties for discovery purposes.

**D.**     <u>**All Plaintiff Captains Are Non-Exempt Because Their Primary Job Duty is First-Line Emergency Response**</u>

Defendant attempts to convince the Court that the First Responder regulations have no effect on whether the Captains are exempt. Its position is that the First Responder regulations were meant only to ensure that if a low-ranked employee like a Technician or Fire Fighter gave

---

[4] Defendant does not dispute that all Safety Officer Captains perform the same duties. DE 122 ¶18.

direction while on the scene of a fire, that that individual would not be mistakenly classified as exempt. This limitation is at odds with the text of the First Responder regulations, as well as DOL's stated purpose for promulgating the regulations. In addition, the defendant fails to point to any instance or case support where this scenario actually occurred, making it unreasonable to believe that DOL engaged in notice-and-comment rulemaking to fix a non-existent problem.

Instead, DOL intended to treat first responders *differently* from other potentially exempt employees who perform supervisory functions. By promulgating the First Responder regulations, DOL identified and recognized several unique qualities of first responders. For example, first responders are usually subject to a rank structure. *See* 29 C.F.R. § 541.3(b)(1) ("regardless of rank"). This rank structure, the "chain of command" (*see* Facts ¶2), is common in police and fire departments and fundamentally directs the flow of orders — orders are transmitted down from the top of the chain to those at the bottom. Recognizing this, DOL sought to discourage decisions regarding exemption status based on an employee's position in the chain of command. As here, where Captains merely pass information up and down the chain of command as they have been ordered to do, these actions cannot define their exemption status.

Importantly, the First Responder regulations recognize that in fire departments the supervision that occurs within the chain of command that does not defeat non-exempt status. "[*F*]*or example*," a fire fighter whose primary duty is to fight fires is not exempt "merely because the . . . fire fighter also directs the work of other employees in the conduct of" his primary duty. 29 C.F.R. § 541.3(b)(2). Thus, as here, where a fire fighter's primary duty is to fight fires, any supervision conducted in the course of that duty, such as fire ground or fire station supervision conducted due to an individual's position in the chain of command or recognized experience, is ***not*** an exempt management function because it is integrated with the

employee's first response responsibilities. *See Mullins v. City of New York*, 653 F.3d 104, 115 (2d Cir. 2011) ("That such activities occur 'in the field' is not the dispositive element; the Secretary's reasoned justification is that such activities, when performed by first responders in the course of their front-line duties, do not involve the 'management of the enterprise in which the employee is employed,' *id*. § 541.3(b)(2), and therefore should not be deemed 'management.'"). This type of supervision, occurring during the course of an employee's primary job duty, is the type of supervision that defendant makes a misguided attempt to claim makes plaintiffs here exempt.

Plaintiffs do not seek to make all employees who may be dispatched FLSA exempt or to make all fire department employees exempt. *See* DE 122 at 22. The First Responder regulations do not cover all fire department employees; they apply only to those whose primary duty is first-response emergency care. Some employees, for example, the Deputy Chiefs, are ***not*** first responders although, ***on occasion***, they may be directed to respond to an emergency scene. It is rare that the shift Deputy is dispatched; indeed, there are only eleven categories of incidents for which the defendant will dispatch Deputy Chiefs, mostly comprised of potential terrorist attacks and multiple-alarm fires.[5] *See* Communications Manual (revised July 2013) (App. 1164-87). Plaintiff Captains, by comparison, arrive in the first wave of emergency response on every single emergency incident to which their crew and apparatus are dispatched. The engine, the unit to which Captains are usually assigned, may be dispatched on 94 of the 109 incidents for which defendant has a pre-determined response plan. *Id*. These incidents range from the most mundane,

---

[5] These incidents are: second alarm fires, biohazard incidents at the Merrifield Post Office, aircraft incidents that do not occur at Dulles airport, detonated explosives, fire involving bulk petroleum storage or petroleum tank trucks, fires in hospitals or jails, and fires and derailments of Metro or other trains, and rescue operations in the Tysons Metro tunnel. Communications Manual (App. 1164-87).

such as an illegal barbeque, to the most severe. *Id*. Notably, Captains are not dispatched based on their rank, like the Deputy Chief, but based on the vehicle they ride. *Id*. Captains respond to save lives with their own hands, not solely to manage others. This differentiates them from other fire department employees, like Deputy Chiefs or the Fire Chief, who are dispatched with the responsibility to manage the scene and observe others. Brandell Decl. ¶10 (App. 1189-90). Unlike plaintiffs, Deputy Chiefs rarely perform front-line fire fighting and generally do not wear their full personal protective ensemble . *Id*. ¶11–13. Unlike plaintiffs, Deputy Chiefs are rarely in IDLH (immediately dangerous to life and health) situations. *Id*. ¶13. Plaintiffs, in contrast, are part of the vital first wave of emergency response, and they provide care accordingly. Consistent with the First Responder regulations, their primary duty is emergency response and they are entitled to FLSA overtime pay.

E.     **Applicable Law Supports Plaintiffs' Interpretation of the First Responder Regulations**

Recent law, as well as the Secretary's interpretation of its own regulations in its *amicus* letter in *Mullins*, support plaintiffs' conclusion that the First Responder regulations made an important shift in the governing law for the FLSA exempt status of first responders. *See* DE 106 at 17–23; DE 123 at 12–16; *Barrows v. City of Chattanooga*, 944 F. Supp. 2d 596, 607 (E.D. Tenn. 2013) ("[C]ourts **must** consider whether the management and supervisory activities performed by the categories of employees listed in § 541.3(b) are undertaken as a part of the employees' primary [first response] duties.") (*citing Mullins*, 653 F.3d at 116) (emphasis added).

Defendant claims that plaintiffs have "ignored the governing law of this Circuit." DE 122 at 18. The controlling law, however has *changed* since the earlier decisions cited by defendant were issued. As plaintiffs have discussed, DE 123 at 13–16, prior cases in this Circuit, such as

*Hartman*, take a fundamentally different approach to the exemption analysis that is no longer appropriate after the First Responder regulations' promulgation, or are factually distinguishable.

Post-2004 cases interpreting the First Responder regulations, such as *Mullins* and *Barrows*, as well as the previously existing caselaw cited favorably by DOL in the preamble, support plaintiffs' position that the DOL First Responder regulations require defendant to pay the Captains FLSA overtime pay. In its preamble, DOL gave examples of decisions that correctly concluded that supervisory first responders should be FLSA non-exempt. *See, e.g.*, 69 Fed. Reg. 22,122 at 22,129 (Apr. 23, 2004) (*citing, inter alia, Department of Labor v. City of Sapulpa, Oklahoma*, 30 F.3d 1285, 1288 (10th Cir. 1994)). In *Sapulpa*, DOL noted that fire department Captains were properly categorized as non-exempt because they "were not in charge of most fire scenes, had no authority to call additional personnel to a fire scene; did not set work schedules; participated in all the routine manual station duties such as sweeping and mopping floors, washing dishes and cleaning bathrooms; and did not earn much more than the employees they allegedly supervised." *Id.* These are the same facts presented here. *See, e.g.*, DE 106 ¶¶9–13, 27–28. Concomitantly, the properly classified exempt employees identified by DOL were very different from plaintiffs. *See* 69 Fed. Reg. at 22,130; *Smith v. Jackson*, 954 F.2d 296, 297 (5th Cir. 1992) (noting that the exempt Fire Chief and Battalion Chiefs perform "hands on" fire fighting work only on "infrequent occasions").

Other cases relied on by the defendant are factually distinguishable because in those cases the plaintiffs did not perform front-line fire fighting duties. *See* DOL *Amicus* Letter Brief (App. 899) ("The cases identified in the preamble [regarding exempt personnel] . . . involved the high-level direction of operations by fire chiefs and fire captains ***who generally did not engage in any front-line firefighting***.") (emphasis added). For example, in *Masters v. Huntington,* there

is no evidence that plaintiffs engaged in any front-line fire fighting whatsoever. 800 F. Supp. 363 (S.D. W.Va. 1992) (discussing only the plaintiffs' responsibilities to direct operations at the fire ground, and not first response duties); *see Sapulpa*, 30 F.3d at 1288 (distinguishing *Masters*). *See also Martinez v. Refinery Terminal Fire Co.*, 2014 U.S. Dist. LEXIS 18244 at *11 (S.D. Tex. Feb. 13, 2014) (noting that plaintiffs only responded to fires and emergency incidents "on occasion" and "to evaluate [subordinates] for training purposes"); *Benavides v. City of Austin*, 2013 U.S. Dist. LEXIS 87648 at *24, 31 (W.D. Tex. June 20, 2013) ("Importantly, Field Commanders may choose to remove themselves completely from the dispatch matrix, whereas ambulance crews on duty must always be ready to respond. . . . Unlike Plaintiffs, the police sergeants [in *Mullins*] were . . . dispatched to all arrests in their unit and required to respond to all such calls."). Plaintiffs here, unlike in the cases defendant notes, are always integrated into the defendant's dispatch matrix, must respond when dispatched, and must always be ready to respond to provide first response care and service. Simply put, plaintiffs here are ***first responders*** first and foremost and, as such, are entitled to overtime pay under the First Responder regulations.

Defendant's accusation that plaintiffs improperly ignored the "highly compensated" employee regulation is both misleading and patently untrue. Plaintiffs have explained that first responders are non-exempt "regardless of rank or pay." DE 106 at 1, 18, 20. Plaintiffs also specifically discussed how DOL guidance provided that first responders "cannot qualify as exempt under the highly compensated test." DE 106 at 19 (citing 69 Fed. Reg. at 22,129). While plaintiffs admittedly did not provide an in-depth analysis in their opening brief, ***this is because the regulation is facially inapplicable.*** *See* DE 123 at 28–30 (discussing how the highly

compensated test does not apply to plaintiffs based on the text of 29 C.F.R. § 541.601(d), 29 C.F.R. § 541.3(b)(1), and the preamble to the regulations, 69 Fed. Reg. at 22,129).

### F. Station Captains Are Not Exempt Executives

The defendant has failed to meet its burden of showing that Station Captains' "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof" and that Station Captains have "the authority to hire or fire other employees" or that their "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100. Station Captains lack the requisite authority to hire or fire employees, and their suggestions are given little or no weight. *See* DE 123 at 22–24.

Further, as discussed above, Station Captains have emergency response, and ***not management***, as their primary job duty. "The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Defendant points to a ***list*** of managerial tasks, and suggests generally that plaintiffs perform all of these duties regularly. *See* DE 122 at 26 (citing 69 C.F.R. [sic] at 22,130). However, hardly any of these activities are performed by plaintiffs in any meaningful way:

● **Evaluating personnel performance** — While Station Captains may complete evaluation reports, those evaluations are always reviewed, and may be changed, by the Battalion Chief. DE 106 ¶42. Moreover, FLSA *non-exempt* Lieutenants complete many evaluations. DE 106 ¶38. Further, plaintiffs testified that their input is limited. DE 106 ¶41. Finally, they spend less than 12 hours a ***year*** evaluating performance. DE 106 ¶39. Insofar as defendants argue that plaintiffs are constantly observing, and therefore evaluating, their crew, DE 122 ¶39, this argument is nonsensical. Non-exempt Lieutenants would need to be making the same types of observations. As such, neither the evaluations nor any observations can differentiate the Captains from the non-exempt Lieutenants.

● **Enforcing and imposing penalties for violations of the rules and regulations** — Station Captains are unable to "enforce" or "impose" any penalties. Station Captains cannot issue discipline, even a verbal counseling, without the approval of their Battalion Chief or shift Deputy Chief. DE 106 ¶44–45. It is the Battalion Chief or Deputy Chief that determines what level of discipline is appropriate for an infraction, or if any discipline is appropriate at all. DE

106 ¶46. Moreover, not all of the 21 representative plaintiffs even "issued" any discipline during the recovery period; and those that did spent less than 3 hours annually doing so. *See supra* n.2.

● **Making recommendations as to [re]hiring, promotion, discipline or termination** — Defendant concedes that plaintiffs play no role in hiring; instead, it alters this factor to read "rehiring." However, there is no evidence in the record that Station Captains play a role in "rehiring." DE 123, Response to Fact ¶43. Defendant admits that Station Captains play no role in the promotional process. DE 122 ¶19; *see also* 29 C.F.R. § 541.100. Station Captains do not make true "recommendations" regarding discipline or termination; they merely report to the defendant what its own SOP dictates. *See* DE 123 at 23–24.

● **Coordinating and implementing training programs** — Defendant mandates that Station Captains and their crew complete certain training and that Station Captains and their crew spend a certain number of hours training on fundamental tasks on each shift. Captains, as well as non-exempt Lieutenants, Technicians, and Fire Fighters, all "coordinate and implement" these training sessions and all participate in training. DE 106 ¶¶34–36. If the work of planning and executing training can be performed by the lowest ranking employee in the station, it is not managerial. The employees who "coordinate and implement training programs" in an exempt fashion are likely those officials assigned to the Fire and EMS Training Sections in the Training division, who are not covered by this lawsuit. *See* Current Organizational Structure (App 1117).

● **Maintaining company payroll and personnel records** — Defendant concedes that plaintiffs do not maintain payroll records. While a file on each individual is maintained at the station, they are largely duplicative of information managed by Human Resources, such as evaluations and discipline, in which plaintiffs have a very small role. *See* DE 114 ¶34.

● **Handling community complaints, including determining whether to refer such complaints to internal affairs for further investigation — *All*** personnel assigned to defendant's stations, including Lieutenants, Technicians, and Fire Fighters, can handle community complaints; this is not a task performed exclusively by the Station Captain. *See* Brandell Decl. ¶3 (App. 1118-1189). Defendant has not produced facts which demonstrate that this task is performed by the Station Captains or that they perform it in a way that is managerial in nature.

● **Preparing budgets and controlling expenditures** — Station Captains do not prepare budgets and have no control over expenditures. Station Commander Captain IIs may make a station "wish list" but  cannot make any station purchases. *See Barrows*, 944 F. Supp at 600–01 ("Fire captains are also not involved in budgeting preparation or decisions for their stations; instead, captains can complete a 'wish list' of items for the firehouse for the administration's review during the budgeting process."). Defendant manages the station's budget. DE 106 ¶50.

● **Ensuring operational readiness through supervision and inspection of personnel, equipment and quarters** — All staff members, including Captains, must ensure that they are prepared to run calls. Captains respond to calls with their crew, and the crew works together to ensure that they are ***all*** prepared to run calls ***together***. DE 106 ¶¶23–24, 35, 37; DE 123 at 20.

The only managerial "inspection" of personnel, equipment, and quarters, is led by the Deputy Chief. *See* Station Inspection Program SOP, PX 59 (App. 1162-63).

●      **Deciding how and where to allocate personnel** — Station Captains do not set or change schedules for employees at their station; do not determine station assignments; and do not assign overtime, approve leave, or set minimum staffing levels. DE 106 ¶49.

●      **Managing the distribution of equipment; maintaining inventory of property and supplies** — Defendant has not, and cannot, point to any facts that suggest Station Captains manage the distribution of equipment, or any inventory of property and supplies.

●      **Directing operations at crime, fire or accident scenes, including deciding whether additional personnel or equipment is needed** — While Captains may direct their crew and perform emergency response activities while responding at the scene of a fire, this work is non-exempt under the First Responder regulations because plaintiffs do it while engaging in emergency response activities. Personnel dispatch decisions are made by the defendant's dispatch algorithm. See DE 123 ¶47; *see also* Communications Manual, (App. 1164-87). Under the Department's response rules, whoever first assumes command at an incident scene will pass command to a higher ranking officer when one arrives. DE 106 ¶82.

Of these tasks, what little plaintiffs may do is not managerial and is certainly not their

*primary* job duty. *See Barrows*, 944 F. Supp. 2d at  604 ("The basic managerial duties that were

performed by Plaintiff — such as basic scheduling of hours and preparing administrative reports

— did not involve management and general operations of the entire CFD enterprise. . . . The

remainder of Plaintiff's managerial duties – such as conducting training sessions, performing

building walk-throughs, and assuring a constant state of preparedness – related directly to his

regular front line firefighting duties."); *Mullins v. City of New York*, 653 F.3d 104 (2d Cir. 2011)

(finding Sergeants exempt where their allegedly managerial work — completing "unusual

occurrence reports," reviewing evidence, verifying complaint reports, stop-and-frisk reports, and

arrest reports — related back to their primary duty as a first responder).

G.      <u>Station Captains' Primary Duty is Emergency Response and Fire Fighting</u>

When determining an employee's primary job duty, the court may consider:

(1) the relative importance of the exempt duties as compared with other types of duties;
(2) the amount of time spent performing exempt work;
(3) the employee's relative freedom from direct supervision; and

(4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a). Considering each in turn compels only one conclusion — Station Captains' primary duty is emergency response.

First, emergency response is by far the most ***important*** duty that Station Captains perform. Regardless of what plaintiffs are doing, when they are dispatched they respond immediately. DE 106, Facts ¶¶29–31. Station Captains are also essential to defendant's "minimum staffing" complement. *See* Staffing Procedures SOP, Pl.'s App. 1036–38. Station Captains are assigned to an apparatus and that apparatus cannot respond to calls without the Captain; it would otherwise be understaffed and would need to be placed out of service. *See id.* The FRD exists to respond to emergency calls and to protect the lives, property, and environment of Fairfax County. DE 106, Facts ¶1. Defendant asks Station Captains to do exactly that when they dispatch them on emergency calls. *See Dalheim v. KDFW–T V*, 918 F.2d 1220, 1227 (5th Cir. 1990) ("[T]he employee's primary duty will usually be what she does that is of principal value to the employer . . . ."). Plaintiffs' other duties are considerably less important. As plaintiffs testified, when the alarm tones they are required to ignore other tasks and instead respond to the emergency call. *See, e.g.*, Robb Dep. 99–100 (App. 1110-11) ("[O]ur main duty is to run calls, period. . . . . There were some things that were not able to be done because I was running calls . . . ."). Further, if the Captain leaves the station on a call with the engine crew and other employees remain behind because their apparatus was not dispatched, lower ranking employees assigned to the station continue to complete tasks — including training, running other calls, and cleaning or generally overseeing the station — without the oversight of the Station Captain. Brandell Decl. ¶3 (App. 1188-89); *see Hickton v. Rnter. Rent-A-Car Co. (In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.)*, 2012 U.S. Dist. LEXIS 130694 at *64–65

(W.D. Pa. Sept. 13, 2012) (noting that a reasonable jury could determine that plaintiff's roles as "delegator of tasks or as a trainer" were not important, as "employees were generally self-sufficient and capable of doing their jobs without any meaningful oversight").

Second, ***plaintiffs spend exactly the same amount of time responding to emergency calls*** as non-exempt members of their crew assigned to the same apparatus. DE 106 ¶¶23-24. Captains also spend the same amount of time as their non-exempt crew performing training and fitness activities. Plaintiffs spend, on average, 2 hours a day performing station-level training on fundamental skills and 2 hours performing physical training, in addition to the time they spend actually running calls. DE 106 ¶¶34, 37. These are the tasks that make up most of plaintiffs' shift, aside from sleeping and meal time.[6] Moreover, plaintiffs spend very little time performing the activities that the defendant considers managerial. For example, plaintiffs spend a maximum of ***12 hours*** *per year* completing evaluations. DE 106 ¶39. The ministerial duties which set plaintiffs apart from their crew occupy an incredibly small piece of plaintiffs' time and as such should not be considered plaintiffs' most important job duty.

Third, plaintiffs in this case are heavily supervised by their Battalion Chief and the shift Deputy Chief. While defendant claims that Battalion Chiefs visit "only" once per week, DE 114 ¶19, this is in part due to the nature of plaintiffs' (and the Battalion Chiefs') rotating 24-hour shift schedule. Many Battalion Chiefs attempt to visit each station in their command at least once

---

[6] Adding up the amount of time the Captains spend engaged in first-response-related activities, the Captains spend more than 60% of their 24 hour shift performing non-exempt duties (sum of defendant's deflated 1.5 hours of in-the-field time, 4 hours of physical training and emergency response training, and 9 hours of sleeping and eating time, divided by 24 hours per shift). Notably, this number excludes other non-exempt time that the Captains spend waiting to respond to emergency calls, such as time spent cleaning the station and apparatus. *See Smith*, 954 F.2d at 299 ("[W]aiting time assumes the character of the work the plaintiffs perform once dispatched to an emergency scene.").

per shift, if not more. Lange Dep. 83–84 (App. 1101-02); Battalion Chief's Handbook sat 8-15

(App. 1133) ("You should visit each station in your battalion ***at least twice*** during each three day

tour . . . .") (emphasis added). If Battalion Chiefs are not present, they are regularly in phone and

email contact with the Captains. DE 114 ¶19. Further, when Battalion Chiefs are not present,

plaintiffs rely on the defendant's SOPs, manuals, and other directives to dictate their responses.

It does not matter if Captains are the highest ranking employees in defendant's fire station at a

given time. Courts have found that employees are not exempt executives even when they were

supervised by an off-site higher-level official. *See, e.g.*, *Morgan v. Family Dollar Stores*, 551

F.3d 1233, 1270–71 (11th Cir. 2008) (upholding a jury verdict finding store managers non-

exempt, where the plaintiff's supervisor was not on-site, but "operations manuals or the district

managers' directives controlled virtually every aspect of a store's day-to-day operations" and

therefore plaintiffs were not free from direct supervision).

Fourth and finally, non-exempt Lieutenants are capable of making more money than the

Station Captains, both because non-exempt Lieutenants receive FLSA overtime pay and because

the pay scale structures Lieutenants' pay very close to the Captains' pay. DE 106 ¶¶9–13. In fact,

Lieutenants have delayed or postponed promotional opportunities because they will make less

money as Captains while performing the same tasks. One plaintiff, for example, pursued seeking

promotion to Captain in the mid-1990s, but remained in the position of Lieutenant for another

10–11 years so that he could continue to receive FLSA overtime pay. Thompson Decl. ¶¶5-6

(App. 1197).[7] It was not until he approached retirement that he sought to again become eligible

---

[7] Defendant disclaims knowledge of Captain Thompson's eligibility for the shift supervisor
position in the mid-1990s. Plaintiffs hypothesize that this may be because the shift supervisor
position at that time was titled "Lieutenant." Thompson Decl. ¶4 (App. 1197).

for the Captain position. Therefore, this factor supports the proposition that Station Captains are non-exempt.

Despite this evidence, defendant argues that ensuring operational readiness, not first response, is the Station Captains' primary job duty. *See* DE 122 at 25. They do so, however, without ever defining what operational readiness entails. It appears that the defendant believes operational readiness "includes managing, training, and developing their personnel, and ensuring that the station and its apparatuses are well maintained and operational." DE 114 at ¶20. However, this cannot be the Captains' primary and most important job. Station Captains do not merely prepare their crews for dangerous situations, and then stay behind to "manage the station" when the crew is toned out. They all go out together. Every person on the crew must be sure that they are ready to respond — if they are not, they put themselves, each other, and the public at risk. Station Captains' primary job duty, therefore, is not merely making sure that others are ready to go, but is *actually going* — that is, personally providing emergency response.

**H.**     <u>**EMS Captain IIs and Safety Officers Are Not Exempt Administrators**</u>

The primary duty of EMS Captain IIs and Safety Officers is emergency response. *See* DE 106 at 27–30; DE 123 at 24–28. Defendant claims that EMS Captain IIs and Safety Officers are exempt administrators who perform primarily "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200.

EMS Captain IIs are dispatched by the defendant to perform emergency response tasks. Defendant inaccurately claims that the representative EMS Captain IIs only performed five medical procedures during the first six months of 2014. DE 122, Def.'s Response to Fact ¶52. Many types of patient care are either not reported or underreported in the ePCR monitoring system. Gonzalez Decl. ¶7–10 (App. 1193-94). For example, certain patient care tasks like lifting

and moving a patient are not reported at all. *Id*. Further, if multiple ALS providers are on a scene, they may all contribute to patient care, but only one provider will report the task and show up in the ePCR. *Id.* For example, Provider A may prepare a syringe with a medication. Provider B then cross-checks the syringe to ensure correct dosage. Provider C may then inject the patient with the medication. Only one provider will be reported as administering the medication in the ePCR system even though all three performed important aspects of patient care. *Id*. ¶10. Defendant diminishes and mischaracterizes the role of the EMS Captain IIs in emergency response incidents as the record reflects that EMS Captain IIs engage in patient care on virtually every shift. *Id*. ¶4, 11. DE 106 ¶¶52–57; *see also* DE 106 at 24–25, 27–28; DE 123 at 24–26. Likewise, Safety Officers are employed by the defendant to be dispatched to control fire scenes. DE 106 ¶64; *see also* DE 106 at 25–26, 28–30; DE 123 at 24–26. These tasks are not "non-manual."

Moreover, EMS Captain IIs and Safety Officers' work is directly related to the defendant's chief "product" — emergency care. The EMS Captain IIs and the Safety Officers do not have a mere 'supporting' role in that "product," but actually ***deliver*** the product themselves through direct emergency response. While defendant notes that Safety Officers engage in activities related to "safety and health," which are identified as functional areas "related to management or general business operations," it ignores the purpose of the defendant's fire department. *See* DE 122 at 29; 29 C.F.R. § 541.201. The ***product*** the defendant is delivering is actually the safety and health of Fairfax County. DE 106 ¶1; *cf. Ferrell v. Gwinnett County Bd. of Educ.*, 481 F. Supp. 2d 1338, 1346–47 (N.D. Ga. 2007) (determining that because "the School System is in the business of educating students, not providing law enforcement" that plaintiff school resource officers were exempt administrators because they were "servicing the School System's business of education"). Here, the business of the fire department is saving lives and

property, for example, by ensuring that fires do not get out of control. Because Safety Officers are first responders focusing on this central mission of the fire department, they are not performing "office or non-manual work directly related to the management or general business operations of the employer" and are therefore not exempt administrators.

Moreover, defendant cites examples that appear to conflate the tests it relies on. For example, defendant claims that EMS Supervisors describe their experiences in resumes[8] as "supervisory and managerial" (DE 122 at 28), and cites EMS Supervisor's duty "evaluat[ing] personnel" (DE 122 at 27). However, defendant is not claiming that EMS Captain IIs are exempt executives. These tasks instead relate directly to the EMS Captain IIs' primary duty of providing emergency response and patient care alongside other lower-ranked providers.

## III.   CONCLUSION

At the end of a Captains' workday, the day is a success if they effectively responded to all dispatched emergency calls. This is the essence of first response work. The Captain does not do this by merely ensuring that his *crew* is prepared to save lives and rescue victims of accidents and crimes. Instead, he saves lives and property with his own hands by pulling hose into a burning building, performing CPR, and rescuing victims from accident scenes. For this reason, and all the reasons stated above, Captains have the primary duty of emergency response and are non-exempt first responders. It is the defendant's burden to demonstrate that the Captains are "plainly and unmistakably within the terms and spirit" of the "narrowly construed" FLSA exemptions. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). The undisputed record evidence ***cannot*** support such a conclusion. Accordingly, this Court should grant plaintiffs' motion for partial summary judgment on the issue of liability under the FLSA.

---

[8] Defendant's reliance on resumes rather than actual duties is misplaced. *See supra* Part II.B.

Dated:  September 19, 2014                    Respectfully submitted,

<div style="margin-left: 45%;">

/s/ Molly A. Elkin
Molly A. Elkin (Va. Bar No. 40967)
Sara L. Faulman
Robin S. Burroughs
WOODLEY & McGILLIVARY LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC  20005
Phone:  (202) 833-8855
mae@wmlaborlaw.com
slf@wmlaborlaw.com
rsb@wmlaborlaw.com

*Counsel for Plaintiffs*

</div>

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 19th day of September, 2014, I electronically filed the foregoing memorandum and appendix using the CM/ECF system, which will send a notification of such filing to all counsel of record, including defendant's counsel:

Sona Rewari (VSB No. 47327)
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive
Suite 1700
McLean, Virginia 22102
srewari@hunton.com

Evangeline C. Paschal
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
epaschal@hunton.com

Lewis Powell, III
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
lpowell@hunton.com

 /s/ Molly A. Elkin
Molly A. Elkin (Va. Bar No. 40967)
WOODLEY & McGILLIVARY LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC  20005
Phone:  (202) 833-8855
mae@wmlaborlaw.com

*Counsel for Plaintiffs*