# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

GERARD MORRISON, et al.,     )
     )
     Plaintiff,     )
     )     Civil Action No. 1:14cv5
vs.     )
     )     Judge Hilton
COUNTY OF FAIRFAX, VA.,     )     Magistrate Judge Anderson
     )
     Defendants.     )
     )
_____     )

## **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIQUIDATED DAMAGES AND A THREE-YEAR STATUTE OF LIMITATIONS UNDER THE FAIR LABOR STANDARDS ACT**

Molly A. Elkin (Va. Bar No. 40967)
Sara L. Faulman
Robin S. Burroughs
WOODLEY & McGILLIVARY LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC  20005
Phone:  (202) 833-8855
mae@wmlaborlaw.com
slf@wmlaborlaw.com
rsb@wmlaborlaw.com

September 19, 2014     *Counsel for Plaintiffs*

# TABLE OF CONTENTS

Table of Authorities.................................................................................................................ii

I.  THE CAPTAINS ARE ENTITLED TO LIQUIDATED DAMAGES AND A THREE-YEAR STATUTE OF LIMITATIONS ...................................................................... 1

II. DEFENDANT'S LACK OF ANY SUPPORTING DOCUMENTATION DEMONSTRATES ITS FAILURE TO MAKE GOOD FAITH COMPLIANCE EFFORTS ....................................................................................................................... 4

III. DEFENDANT HAS FAILED TO MEET ITS BURDEN TO AVOID THE MANDATORY IMPOSITION OF LIQUIDATED DAMAGES .......................................................... 6

   A.  Liquidated Damages Are Not Limited To Off-the-Clock Cases................................. 7

   B.  Court Orders and Decisions Issued Prior to the Applicable  Regulations Do Not Establish A Section 260 Defense ......................................................................... 8

   C.  The Defendant Did Not Act in Good Faith ................................................. 10

   D.  The Defendant Failed to Act With Objective Reasonableness ................................... 15

IV. PLAINTIFFS ARE ENTITLED TO A THREE- YEAR STATUTE OF LIMITATIONS . 17

   A.  Willfulness Does Not Require Binding Precedent....................................................... 17

   B.  The County Repeatedly and Deliberately Ignored Requests and  Warnings That It Was Violating the FLSA................................................................................ 18

V.  CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

SUPREME COURT CASES

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) ................................................................. 7, 8

*McLaughlin v. Richland Shoe Company*, 486 U.S. 128 (1988) ............................................. 17, 18

CIRCUIT COURT CASES

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003 ........................................................................ 13

*Castro v. Chicago Housing Authority*, 360 F.3d 721 (7th Cir. 2004) ............................................ 4

*Chao v. Self Pride, Inc.*, 232 Fed. Appx. 280 (4th Cir. 2007) ...................................................... 17

*Lockwood v. Price George's County*, 2000 U.S. App. LEXIS 15302 (4th Cir. 2000), ................. 6

*Mayhew v. Wells*, 125 F.3d 216 (4th Cir. 1997). ........................................................................... 6

*Mullins v. City of New York*, 653 F.3d 104 (2d Cir. 2011) ...................................................... 3, 15

*Perez v. Mountaire Farms, Inc.*, 650 F.3d 350 (4th Cir. 2011), .................................................. 17

*Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th Cir. 2008) ............................ 4

*Reich v. S. New Eng. Telecoms. Corp.*, 121 F.3d 58 (2d Cir. 1997) .............................................. 6

*Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58 (2d Cir. 1997) ......................... 10

*Richard v. Marriott Corp.*, 549 F.2d 303 (4th Cir. 1977) .............................................................. 7

DISTRICT COURT CASES

*Asher v. Aphelion Tech. Sys. Integrators, Inc.*, 1999 U.S. Dist. LEXIS 8653 (W.D. Va. April 23, 1999) ........................................................................................................................................ 14

*Barrows v. City of Chattanooga*, 944 F. Supp. 2d 596 (E.D. Tenn. 2013) ............................ 3, 15

*Benavides v. City of Austin*, 2013 U.S. Dist. LEXIS 87648 (W.D. Tex. June 20, 2013) ............ 16

*Brown v. L & P Indus.*, 2005 U.S. Dist. LEXIS 39920 (E.D. Ark. Dec. 21, 2005) ...................... 19

*Bull v. United States*, 68 Fed. Cl. 212 (2005). ............................................................................. 17

*Hardrick v. Airway Freight Sys.*, 63 F. Supp. 2d 898 (N.D. Ill. 1999 ......................................... 19

*Hartman v. Arlington Cnty.*, 720 F. Supp. 1227 (E.D. Va. 1989) ................................................. 8

*Lanza v. Sugarland Run Homeowners Association, Inc.*, 97 F. Supp. 2d 737 (E.D. Va. 2000)..... 7

*Lockwood v. Prince George's County, Maryland*, 58 F. Supp. 2d 651 (D. Md. 1999) ............... 10

*Munston v. MKI Sys., Inc.*, 951 F. Supp. 603 (E.D. Va. 1997)................................................ 14, 18

*Watkins v. City of Montgomery*, 919 F. Supp. 2d 1254 (M.D. Ala. 2013). ................................. 16

*Williams v. Maryland Office Relocators, LLC*, 485 F. Supp.2d 616 (D. Md. 2007) ................... 16

## STATUTES

29 U.S.C. § 216.................................................................................................................................. 6

29 U.S.C. § 255................................................................................................................................ 17

29 U.S.C. § 260............................................................................................................................. 6, 8

## REGULATIONS

29 C.F.R § 541.3 ......................................................................................................................... 10, 12

## OTHER AUTHORITIES

69 Fed. Reg. 22,122 (Apr. 23, 2004) .......................................................................................... 9

For the reasons set forth below, and in plaintiffs' previous briefs, plaintiffs respectfully request that the Court grant plaintiffs' motion for partial summary judgment on the issue of liquidated damages and a three-year statute of limitations under the Fair Labor Standards Act (FLSA) and deny defendant's motion for summary judgment on these same claims.[1]

## I.    THE CAPTAINS ARE ENTITLED TO LIQUIDATED DAMAGES AND A THREE-YEAR STATUTE OF LIMITATIONS

Defendant's repeated argument that the facts cited by the plaintiffs in their opening brief are not relevant, and its continuous insertion of non-responsive, and frequently completely irrelevant, objections serve only to highlight the undisputed nature of the plaintiffs' facts, facts that go to the heart of their claim for liquidated damages and a three-year statute of limitations.

The undisputed facts demonstrate that the defendant's initial classification of the plaintiffs as exempt in 1986 was an extremely limited and cursory "review."  For example, it is undisputed that:

- Defendant made its initial decision to classify the plaintiffs as exempt solely on written job descriptions and class specifications.  Plf. Stmt. of Fact, DE 108 and Def. Response to Fact, DE 121 ("Fact") ¶4[2]; *see also* Def. Fact, DE 110, ¶2 (defendant admits it "made a decision based on the class specifications and position description").

- Defendant did not shadow any actual employees or consult with anyone from Fire Department management in 1986.  Fact ¶5.

- Defendant did not rely on any legal advice in making the determination that the plaintiffs were exempt in 1986.  Fact ¶6.

---

[1] Plaintiffs incorporate by reference the papers previously filed in support of their motions for partial summary judgment as to the issue of defendant's liability for its failure to pay FLSA overtime pay (DE 106) and as to the issue of liquidated damages and a three-year statute of limitations (DE 108), as well as their papers in opposition to the defendant's motion for summary judgment as to its liability (DE 123) and in opposition to the defendant's motion for summary judgment as to liquidated damages and a three-year statute of limitations (DE 124).

[2] Defendant claims it also consulted with the Fire Department in 1986.  (DE 121, p. 4). That claim is not supported by the evidence it cited.  The cited deposition testimony actually concerns events that allegedly occurred in 2004.

- Defendant did not conduct a study — other than looking at written job descriptions / class specifications — to determine whether either Captain I Shift Supervisors or Captain II Station Commanders are properly exempt. Facts ¶¶8-9.

- Defendant has no idea when it determined that Safety Officers and EMS Captains are exempt from the FLSA.  Facts ¶¶10-11.

The undisputed facts also demonstrate that the defendant took no active steps to ascertain its liability following the Department of Labor's (DOL) promulgation of the First Responder Regulations in 2004, or at any point thereafter:

- Defendant "did not interview Captains or their supervisors for the specific purpose of analyzing the first responder regulation." Fact ¶15.

- Defendant did not contact anyone at DOL with respect to its classification of employees after the promulgation of the First Responder Regulations, or at any time thereafter.  Facts ¶¶16, 42.

- Defendant "at no point—not in 1985, not in 2004, and not any time thereafter — ... ever interviewed actual Fire Captains about their job duties or shadowed/observed a Fire Captain during his or her shift to determine their primary job duty or ensure that the exemption or exemptions claimed are correct." Fact ¶40.[3]

- Defendant never analyzed or studied the differences or similarities between the job duties of non-exempt Fire Lieutenants and allegedly exempt Captains.  Fact ¶42.

- Defendant never requested a legal opinion as to whether it had properly classified Captains as FLSA exempt.  Fact ¶44.

Similarly, the undisputed facts demonstrate the defendant took no active steps to ascertain its liability under the FLSA upon notification by its employees that Captains should be non-exempt under the First Responder regulations, its own jurisdictional study showing that surrounding jurisdictions classified their Captain equivalents as FLSA non-exempt, and

---

[3] This failure is compounded by the undisputed fact that the head of Human Resources, responsible for making FLSA determinations, has no working knowledge of Fire Department operations.  Plf. Fact, DE 108, ¶5.  Woodruff specifically testified that "I don't have any knowledge of the operations piece."  DE 108-1, App. 58.

decisions issued by federal courts, that there was at least a *chance* it was not following the

dictates of the FLSA. For example, defendant admits that:

- At least four employees submitted various requests concerning the application of the 2004 First Responder regulations to Captains and defendant failed to explain to any employee how it determined that Captains should not be reclassified as non-exempt. Facts ¶¶18-19, 22-23, 25, 31.

- The Human Resources Department did not review the responses to three of those employees. Facts ¶¶20, 24, 33.

- In the fourth response, to Deputy Chief Ryan, the written response cited to the *old* regulation for the executive exemption *which was no longer applicable*. Fact ¶26.

- Defendant has no record of doing anything — studies, investigations or a ride-along — in response to the employee requests. Facts ¶¶21, 24, 27, 33.

- When it undertook a study of seven surrounding jurisdictions, it found that three jurisdictions classify the rank equivalent to Captain I as FLSA non-exempt and two classify the rank equivalent to Captain II as FLSA non-exempt, yet failed to review or analyze relevant job duties to determine whether it had accurately classified Captain Is and IIs as FLSA exempt. Fact ¶¶28-29.

- Defendant failed to review or analyze its FLSA classifications following the decision in *Mullins v. City of New York*, 653 F.3d 104 (2d Cir. 2011). Fact ¶35.

- The Human Resources Director did not even read the decision in *Barrows v. City of Chattanooga*, 944 F. Supp. 2d 596 (E.D. Tenn. 2013), applying the First Responder regulations to a position with nearly identical duties as the plaintiff fire Captains, and finding that Captain non-exempt. Fact ¶36.

Finally, the undisputed facts highlight the dearth of evidence that memorializes any

analysis undertaken or determination made regarding the plaintiffs' FLSA exemption status:

- Defendant does not have a *single document* — not one letter, memoranda or otherwise — that documents its alleged review of the plaintiffs' job duties, alleged analysis of those duties as compared to the FLSA overtime exemptions, and alleged determination that the employees should be classified as exempt, in 1986 or otherwise. Facts ¶8 (no documents regarding Captain I shift supervisors), ¶9 (no documents regarding Captain II station commanders), ¶10 (no documents regarding Safety Officers), ¶11 (no documents regarding EMS Captains).

- Defendant does not have a single document memorializing any assignment to research the 2004 First Responder regulations, any analysis into the First Responder regulations, or any conclusions reached as a result.  Fact ¶15

- Defendant gave nothing in writing to the Fire Department explaining the First Responder Regulations or stating that the Captains remained exempt.  Fact ¶17.

- Defendant does not have a single document demonstrating that the County discussed FLSA exemption issues in any "public safety forum."  Fact ¶34.

## II. DEFENDANT'S LACK OF ANY SUPPORTING DOCUMENTATION DEMONSTRATES ITS FAILURE TO MAKE GOOD FAITH COMPLIANCE EFFORTS

As plaintiffs explained in their opposition brief (*see* DE 124, pp. 9), a court should be justifiably skeptical of an opinion concerning the application of the FLSA if is not reduced to writing and is not reflected in any document. *Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th Cir. 2008) (Jury could be justifiably skeptical of opinion not reduced to writing "or otherwise reflected in any document"). *See also Castro v. Chicago Housing Authority*, 360 F.3d 721, 731 (7th Cir. 2004) (finding that the plaintiffs in a WARN Act case were entitled to liquidated damages under a nearly identical statute in large part because the defendant "maintained and produced no papers, no memoranda, and no files related to his research, [and] we have no way to determine whether he conducted extensive research into the issue or merely made a cursory glance at the statutes and case law)."[4]

Defendant does not dispute that it has no documentation — other than deposition testimony obtained in 2014 from an individual who admitted that she does not recall specifically

---

[4] Defendant attempts to minimize the importance of *Castro* by claiming that it is inapposite because it involved the WARN Act and the Seventh Circuit was reviewing the district court's judgment as to witness credibility.  Defendant is incorrect.  First, the written documentation, or lack thereof, goes to whether the defendant can prove it intended to comply with the Act and is not dependent on the underlying law.  Second, we are not asking the Court to determine that Woodruff is not credible, but to look skeptically on the defendant's stated assertion that it conducted a thorough and detailed analysis when it "maintained and produced no papers, no memoranda, and no files related to [its] research."  *Castro*, 360 F.3d at 731.

reading the First Responder regulations, but simply knows that the County "reviewed this issue" (Woodruff Tr. 200; DE 108.1, App. 100) — of any "analyses" or "determinations" it made with respect to its classification of the Captains as exempt from the FLSA, including its conclusion that the 2004 First Responder regulations apply only to rank-and-file fire fighters who may, on occasion, supervise and direct other employees while at the scene of a fire. Instead, defendant simply asserts, without *any* evidence corroborating Woodruff's testimony, that it conducted a review and determined that the Captains were exempt in 1986 (DE 110, Def. Fact ¶1); that it analyzed the First Responder regulations and in 2004, determined that they did not constitute a change in the law, and did not apply to the positions at issue because the Captains "perform exempt duties even when not at an incident scene" (DE 121, Def. Response to Fact ¶14 and p. 17); and that it "determin[ed] that [*Mullins*] did not apply beyond the scope of police department personnel who were already compensated by the County" (DE 121, p. 17). There is no supporting documentary evidence of any of these "facts."

It boggles the mind that, if the County undertook *any* sort of analysis into these important legal determinations, let alone a detailed one, there would be not one single piece of paper related to that analysis. Notably, the following are absent from the County's production of *millions* of pages of discovery: (1) *any* written document applying the job duties of the Captains to the exemptions and making the determination that one or more exemptions applied in 1986; (2) *any* assignment directing an employee or group of employees to analyze the 2004 First Responder Regulations alone, or as they relate to the County's first responder employees, (3) *any* notes or memoranda documenting a legal analysis of the 2004 First Responder Regulations, in draft or final form, (4) *any* notes or memoranda documenting any factual research undertaken of the various first responders' job duties, and (5) *any* notes or memoranda that set forth the

County's determination that the First Responder regulations do not apply to the rank of Captain. This absence of any documentation, combined with defendant's admitted failure to contact DOL or to request the advice of counsel, and failure to investigate the actual day-to-day job duties of the Captains, calls into question its intentions towards FLSA compliance. Further, that defendant has actually changed its mind as to which FLSA exemption allegedly applies to the different positions during the course of the litigation (*see, infra.*, pp. 13-14), further evinces that defendant did not act in good faith in 1986, or at any point since.

### III. DEFENDANT HAS FAILED TO MEET ITS BURDEN TO AVOID THE MANDATORY IMPOSITION OF LIQUIDATED DAMAGES

The FLSA explicitly provides that "[a]ny employer who violates the provisions [of the Act] shall be liable to the employee or employees affected in the amount of ... their unpaid overtime compensation, ... and in an additional equal amount as liquidated damages. 29 U.S.C. § 216(b)  The Fourth Circuit has long held that such damages are "the norm" and may only be denied under Section 260 if the employer meets its "plain and substantial burden" of "persuad[ing] the court that the failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose" such damages. *Lockwood v. Price George's County*, 2000 U.S. App. LEXIS 15302, *18 (4th Cir. 2000) (citing *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997)).

Despite bearing the burden of proof, defendant offers not one fact demonstrating that it took "active steps to ascertain the dictates of the FLSA and then move to comply with them," and therefore lacks the requisite good faith. *Reich v. S. New Eng. Telecoms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).  Likewise, defendant's tired and unsupported argument that the First Responder regulations do not apply to the Captains is misplaced.  Defendant centers its belief that it was complying with the law on agreements ***entered into ten years before the applicable regulations***

*were issued*. Based on even a cursory review of the First Responder regulations, the preamble to the regulations, DOL's amicus brief submitted in support of the employees in *Mullins*, and the most basic rules of regulatory construction, defendant's self-serving, post-hoc reading of the law is unreasonable. Given the failure of the defendant to meet its burden, the district court has no discretion to mitigate defendant's liability for liquidated damages. *See, e.g., Richard v. Marriott Corp.*, 549 F.2d 303, 305-06 (4th Cir. 1977) ("[t]he language of the statute is mandatory").

### A.    Liquidated Damages Are Not Limited To Off-the-Clock Cases

Defendant argues that liquidated damages should not be awarded because, unlike in cases involving off-the-clock work, the Court can identify the number and length of shifts worked by the plaintiffs. DE 121, pp. 19-20. This argument is nonsensical.

As the defendant acknowledges, this Court in *Lanza v. Sugarland Run Homeowners Association, Inc*., 97 F. Supp. 2d 737 (E.D. Va. 2000), recognized that liquidated damages are compensatory in nature "designed to compensate the employee for damages 'too obscure and difficult of proof of estimate other than by liquidated damages.'" *Id*. at 740 (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). Contrary to defendant's argument, this holds true for *all* FLSA cases, not just those with "off-the-clock work," as liquidated damages are intended to compensate employees for obscure damages *caused by the employer's failure to pay what was required in a timely fashion*. Indeed, as the Supreme Court elaborated:

> It constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living "necessary for health, efficiency and general well-being of workers" and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being. Employees receiving less than the statutory minimum are not likely to have sufficient resources to maintain their well-being and efficiency until such sums are paid at a future date.

*Brooklyn Savings*, 324 U.S. at 707-708. In layman's terms, liquidated damages are similar in purpose to pre-judgment interest. *Id*. at 715 (recovery of liquidated damages and prejudgment interest is "compensation for damages arising from delay in the payment of the basic minimum wages"). For the defendant to argue that they do not apply because the Court can determine the amount of backpay owed borders on the absurd and has no basis in either the statute or caselaw.

Further, had Congress intended liquidated damages to apply only in those instances where there was "off-the-clock" work and backpay could not be determined with certainty it would have so stated. The Section 260 affirmative defense was added to the FLSA in 1947 in the Portal-to-Portal Act. *See* 80 P.L. 49. Prior to the addition of the affirmative defense, courts were not permitted to deviate from an award of liquidated damages. Notably absent from the Section 260 affirmative defense (which permits a court to deny liquidated damages *only if* the employer can demonstrate that it acted in good faith and had reasonable grounds for believing its behavior did not violate the FLSA) is any qualification that liquidated damages may not be awarded if backpay is quantifiable. *See* 29 U.S.C. § 260.

> **B.    Court Orders and Decisions Issued Prior to the Applicable Regulations Do Not Establish a Section 260 Defense**

The County's most oft-repeated defense is to claim that the plaintiffs are not entitled to liquidated damages because of orders entered into by agreement in *1994* (hereinafter referred to as "*Ivins* Orders") in a series of lawsuits filed against the County, as well as a case decided by this Court in 1989, *Hartman v. Arlington Cnty*., 720 F. Supp. 1227 (E.D. Va. 1989). Neither of these documents provides the good faith and reasonable grounds defendant is required to demonstrate to avoid an otherwise mandatory award of liquidated damages.

Significantly, defendant's argument is devoid of a single document that demonstrates that the County *considered and relied upon* the *Ivins* Orders or *Hartman* in 2004, when the First

Responder regulations were promulgated. In 2004 and 2007, when various employees submitted requests for clarification of the FLSA exemptions as applied to first responders, the County was silent about the *Ivins* Orders and *Hartman* decision. In 2011 when the Second Circuit issued its decision in *Mullins,* the County said nothing of its reliance on the *Ivins* Orders or *Hartman* decision. Nor was there ever even a whisper of the *Ivins* Orders or *Hartman* at any other point after the promulgation of the First Responder regulations. Indeed, even in the most-detailed response, given to Deputy Chief Ryan in June 15, 2007, the defendant states that its decision that Captain Is and Captain IIs are exempt from the FLSA was "based on a review of the duties test...,[]" citing the outdated, no longer applicable regulation, in combination with the counties' poll of local jurisdictions. *See* DE 108-1, App. 150. Defendant does not mention the *Ivins* Orders or the *Hartman* decision. Moreover, not once in its brief did defendant actually demonstrate with a fact, and not a lawyer-driven argument, that its classification decision relied upon *Ivins* or *Hartman*. Instead, the County merely provides the Court with a summary and claims that "it would [therefore] be manifestly unfair to impose liquidated damages in this case." DE 121, pp. 14-16.

Further, defendant fails to address how these Orders, which state only that the parties agree that the plaintiffs had management as their primary job until May 13, 1994 (*see, e.g.*, DE 110-8), or *Hartman*, which found that managerial duties include supervision at the scene of a fire, remain controlling after the promulgation of the 2004 First Responder regulations. The 2004 First Responder regulations were issued by the Department of Labor to "make clear ... that such ... first responders are entitled to overtime pay." 69 Fed. Reg. 22,122 at 22,129 (Apr. 23, 2004). Specifically, DOL, after a notice and comment period, stated that the "Section 13(a)(1) exemptions [from the FLSA] do not apply to... fire fighters, paramedics, emergency medical

technicians, ambulance personnel, rescue workers, hazardous materials workers and other similar employees, regardless of rank or pay level, who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; ... or other similar work." 29 C.F.R §541.3. DOL further explained that "management" under the First Responder regulations does not include supervision that occurs during the performance of first responder activities. *Id*. at §541.3(b)(2); *see also Mullins*, 653 F.3d at 115) (affording deference to the Secretary's interpretation of her own regulation and finding that "the performance of non-exempt [first responder duties] that involves supervision of other officers does not transform that non-exempt work into exempt "management.").[5] *See also* DE 124, pp. 9-11.

Given that both the *Ivins* Orders and *Hartman* involve a determination of a first responder's primary duty, and that the consideration of what tasks are managerial has changed, neither *Hartman* nor the *Ivins* Orders support a finding of good faith or a reasonable belief.[6]

## C. The Defendant Did Not Act in Good Faith

To demonstrate "good faith" for purposes of avoiding the otherwise mandatory imposition of liquidated damages, the employer must demonstrate that it took active steps to ascertain the dictates of the FLSA and then move to comply with them. *Lockwood v. Prince George's County, Maryland*, 58 F. Supp. 2d 651, 658 (D. Md. 1999) (citing *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)), *aff'd* 2000 U.S. App. LEXIS 15302 (4th Cir. June 29, 2000). Defendant's misguided argument boils down to the following: it did not investigate its FLSA liability after 2004, but even if it had, it would still classify Captains

---

[5] While on-scene supervision is illustrative of non-exempt supervision, it is not exhaustive. 29 C.F.R. § 541.3(b)(2) ("Thus, **_for example_**, a ... fire fighter whose primary duty is to ... fight fires is not exempt under section 13(a)(1) of the Act merely because the ... fire fighter also directs the work of other employees in the conduct of ... fighting a fire.") (emphasis added).

[6] Agreements between parties cannot serve as waivers of rights under the FLSA or as a basis to establish subjective good faith or objective reasonableness. *See* DE 124, p. 11 (citing cases).

as FLSA exempt. This type of passive reaction to its obligations under the FLSA cannot evince good faith, and defendant therefore failed to meet its burden.

The defendant attempts to show good faith by pointing to seven alleged steps it took to comply with the FLSA. DE 121, p. 17. Specifically, defendant claims it conducted a cursory review of written position descriptions in 1986 (without talking to a single actual employee); reviewed Orders entered into in 1994; reviewed the 2004 First Responder regulations and determined (without any evidence of its analysis) that they were essentially meaningless; stayed informed about the FLSA; reviewed the *Mullins* decision and determined (again, without any evidence of its analysis) that it only applied to police officers; stayed informed of neighboring jurisdictions' pay practices; and surveyed seven neighboring jurisdictions (but did not then apply those jurisdictions' findings to the job duties of the Fairfax County plaintiffs). *Id.* As plaintiffs previously established, these alleged "activities" do not evidence the type of active steps necessary to demonstrate good faith and avoid liquidated damages. *See* DE 124, pp. 24-28 (citing cases)

Significantly, not one of the alleged "facts" includes any actual investigation of the Captains' job duties. This is true even with respect to the County's initial classification of the Captains in 1986. Defendant admits that it made its initial "decision based on the class specifications and position description." Def. Fact, DE 110, ¶2; *see also* Fact ¶4. At no point did the defendant shadow an actual employee, consult with anyone from Fire Department management, rely on the advice of an attorney, or conduct any sort of study or analysis of the actual (*i.e.*, non-written) day to day job duties of the Station Captains. Facts ¶¶5-6, 8-9. Indeed, the defendant cannot identify when it made the determination that Safety Officers and EMS Captains are FLSA exempt. Facts ¶¶10-11. Further, although defendant places great reliance on

its written position descriptions (*see* DE 121, p. 21), this reliance is unjustified as defendant admitted that, when it used those written description to classify Captains as exempt, it never talked with Fire Department management to verify that the class specifications captured what the employees actually did on a day-to-day basis, and never interviewed an actual employee about their day-to-day job duties. Woodruff Tr. 115-116, DE 108.1, App. 53-54.

Nearly two decades later, in 2004, DOL promulgated the First Responder regulations. *See* 29 C.F.R. § 541.3. Once again, defendant did nothing to ensure its compliance with the law. Defendant admits that it "did not interview Captains or their supervisors for the specific purpose of analyzing the first responder regulation" and never shadowed or observed a Captain to determine their primary job duty or ensure the exemption claimed was correct. Def. Response to Facts ¶¶15, 40. Defendant admits that it did not contact anyone at DOL (Facts ¶¶16, 42) or request a legal opinion (Fact ¶44) concerning whether its classification was proper. Further, although it classifies Lieutenants as non-exempt, the defendant admits that it never analyzed or studied the similarities between the job duties of Lieutenants versus Captains. Fact ¶42.[7]

Defendant maintained its ostrich-like approach to FLSA compliance by ignoring repeated requests to analyze whether its exempt classification of Captains was accurate. Despite the submission of at least four requests concerning the application of the 2004 First Responder Regulations, the defendant refused to explain how it determined that Captains should not be reclassified as non-exempt. Facts ¶¶18-19, 22-23, 25, 31. In one of those responses, the only

---

[7] To avoid the import of the fact that Lieutenants perform the same work as Captains, defendant makes the never-before asserted argument that Lieutenants could also be classified as FLSA exempt, claiming that it made its 1986 exemption decision based on the salary level of employees, which further belies its unsupported argument that it actually conducted a thorough analysis of job duties in 1986. Fact ¶42. Moreover, there is simply no evidence that Lieutenants, who have been classified as FLSA non-exempt from 1986 to the present, should actually be classified as FLSA exempt.

one to cite to any regulation, the defendant actually cited directly to the outdated executive

exemption regulation, which was no longer applicable, and ignored the applicable First

Responder regulations.  Fact ¶26.[8]  The defendant admits it did not do any sort of investigation,

study, or ride-along in response to those requests.  Facts ¶¶21, 24, 27, 33.  Even when

defendant's own review demonstrated that three surrounding jurisdictions classify the rank

equivalent to Captain I as FLSA non-exempt and two classify the rank equivalent to Captain II as

FLSA non-exempt, the defendant turned a blind eye to the results and failed to review or analyze

the relevant job duties to determine whether it accurately classified Captain Is and IIs as FLSA

exempt.  Facts ¶¶28-29.[9]

Post hoc explanations and justifications for FLSA violations are not the pre-emptive,

active endeavors necessary to establish affirmative steps to ensure compliance with the FLSA.

*See Alvarez v. IBP, Inc*., 339 F.3d 894, 910 (9th Cir. 2003) (affirming district court's award of

liquidated damages where defendant simply attempted to explain its actions rather than present

evidence of its steps to ensure FLSA compliance).  This type of insufficient after-the-fact

justification is all defendant has to offer. Repeatedly claiming that outdated court rulings justify

its decision is nothing more than the defendant's smoke and mirrors attempt to turn the Court's

attention away from the truth — that the County took not even a baby step to ensure FLSA

compliance.

This failure is particularly egregious here, where the County initially refused to identify

the applicable exemption for each of the Captains until forced to do so by Magistrate Judge

Anderson (*see* DE 108-1, App. 23-33) and has, since then, ***changed*** its position about which

---

[8] The defendant's only defense is to argue, without support, that entering in the citation for an outdated regulation must have been a mere "typographical error."  *See* DE 121, p. 18, fn. 6.
[9] Likewise, the defendant failed to review or analyze its FLSA classifications following the decisions in *Mullins* and *Barrows*.  Facts ¶¶35-36.

exemptions it is claiming. *See, e.g.*, DE 121, Def. Response to Fact ¶10 (withdrawing executive exemption for Safety Officers). As plaintiffs established, a failure to tie an exemption to a particular employee is evidence of a lack of good faith. *See, e.g., Asher v. Aphelion Tech. Sys. Integrators, Inc*., 1999 U.S. Dist. LEXIS 8653 at * 25 (W.D. Va. April 23, 1999) (finding that the employer failed to demonstrate good faith when it, *inter alia*, failed to "tie the exemptions he claimed for his employees to any particular FLSA provision or regulation").

Defendant also attempts to show its good faith by citing *Munston v. MKI Sys., Inc*., 951 F. Supp. 603 (E.D. Va. 1997), and stating that references to practices within the industry can be evidence of good faith. DE 121, p. 24. However, missing from this discussion is a single "industry practice" with which the defendant asserts it is acting in compliance. As its own survey found, there is actually an "industry practice" in several surrounding jurisdictions to pay FLSA overtime pay to Captains. Fact ¶28. This fact, alone, undermines defendant's bald assertion that it was acting consistently with industry practice.

Moreover, the *Munston* facts are markedly different. There, the uncontradicted record demonstrated that (i) the employer's employment manual was adapted verbatim from a company with in-house legal staff, (ii) an officer of the employer periodically reviewed and updated the manual, (iii) that officer was a lawyer, and (iv) the lawyer attended continuing legal education classes and consulted booklets with respect to the company's FLSA compliance. 951 F. Supp. at 613. In sum, the *Munston* employer adopted the FLSA compliance determinations made by a legal team, and then employed an attorney with specific training in FLSA compliance to periodically update those determinations. Notably, the defendant here did none of these activities. Indeed, despite having in-house counsel, defendant is not relying on the advice of counsel as the basis for its good faith defense. Fact ¶6. It cannot identify a single document

where it set forth its determination that Captains were exempt, did not consult with any legal advisors, internal or external, and its own head of Human Resources has had no formal training in the FLSA and had never attended even an FLSA online training course.

### D. The Defendant Failed to Act With Objective Reasonableness

Although it bears the burden of demonstrating that it acted with objective reasonableness, the only justification the defendant can muster is to claim that the caselaw concerning the application of the First Responder regulations is not uniform and that plaintiffs' counsel has "acknowledged the dubious nature of their claims." DE 121, p. 28. Both of these assertions are incorrect and cannot establish objective reasonableness.

Defendant alleges that the caselaw regarding application of the First Responder regulations to the plaintiffs is either unclear or favorable to defendant. To the contrary, when analyzing the job duties of the plaintiffs in comparison to the facts in other cases, the caselaw implementing the 2004 First Responder regulations *supports* classifying the plaintiff Captains as non-exempt. *See* DE 124, pp. 5-16. To summarize, the Second Circuit in *Mullins* recognized that any analysis of public safety supervisors must be done against the backdrop of the First Responder regulations, and that first responder activities are not transformed into management activities just because that officer in question is the highest ranking officer. *Mullins,* 653 F.3d 104. In *Barrows*, where the plaintiff had nearly the exact same job duties and responsibilities of the Fire Station Captains here, the district court found the Captain non-exempt. *Barrows*, 944 F. Supp. 2d 596. In *Benavides*, relied upon by the defendant, the officers found to be exempt were not, in contrast to the plaintiffs here, dispatched to all calls and had the discretion to take themselves out of service. *Benavides v. City of Austin*, 2013 U.S. Dist. LEXIS 87648 (W.D. Tex. June 20, 2013). Finally, *Watkins* is not illuminating, as there is no record of the facts

introduced at trial upon which the jury made its determination, nor is defendant able to identify a single piece of evidence relied upon by the jury in determining that the *Watkins* plaintiffs' primary job duty was management. *Watkins v. City of Montgomery*, 919 F. Supp. 2d 1254 (M.D. Ala. 2013). In light of this legal landscape, it is unreasonable for the defendant to have failed to investigate its compliance with the FLSA and to have failed to compare the caselaw to the actual job duties of its Captains. *See Williams v. Maryland Office Relocators, LLC*, 485 F. Supp.2d 616, 620 (D. Md. 2007) ("[w]here a question is complex or uncertain, an employer at the least must show that it made a diligent investigation into the issues and concluded not to pay overtime based upon the results of its investigation").

Finally, there is no factual support for defendant's second claim, that plaintiffs' counsel believes the case to be "dubious." DE 121, p. 28. Neither of the documents relied upon by defendant was issued before any of the caselaw applying the First Responder regulations, discussed above. Further, as previously demonstrated, the IAFF Manual actually states the opposite of what defendant claims, stating that courts have ***misapplied*** the First Responder regulations by "ignoring[] the language in the regulations themselves that declare that fire fighters 'regardless of rank or pay level' are entitled to overtime," and clarifies that those courts have acted erroneously. Plf. Resp. to Def Fact, DE 124, ¶ 27. Likewise, the email that one Union member sent to other union members in 2008 states that it would be beneficial to get "clarifying" regulations issued by the DOL, not that there was a need for "regulatory change." Plf. Resp. to Def. Fact ¶ 28. Moreover, defendant did not have access to these documents prior to 2014, and thus clearly did not rely on the alleged advice in determining that plaintiffs were FLSA exempt.

## IV. PLAINTIFFS ARE ENTITLED TO A THREE- YEAR STATUTE OF LIMITATIONS

Plaintiffs are entitled to the application of a three-year statute of limitations because defendant acted recklessly in not ascertaining its legal obligations. *See* 29 U.S.C. § 255(a). Defendant has provided no rebuttal to plaintiffs' showing of defendant's recklessness. The Supreme Court has held that an employer's violation of the FLSA is willful within the meaning of the law where it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Company*, 486 U.S. 128, 133 (1988). The Fourth Circuit has found that employers act recklessly when they have "notice, actual or constructive[,] of the existence and general requirements of the FLSA" (*Chao v. Self Pride, Inc*., 232 Fed. Appx. 280, 287 (4th Cir. 2007)) yet ignore those warnings. Evidence that an employer disregards "the very possibility" that it has violated the FLSA and makes no effort to investigate its legal obligations demonstrates recklessness. *Bull v. United States*, 68 Fed. Cl. 212, 272-74 (2005). Here, the County has done just that.

### A. Willfulness Does Not Require Binding Precedent

Defendant claims that it could not have acted willfully as there is no Fourth Circuit caselaw expressly stating that Fire Captains are entitled to overtime compensation under the FLSA, and that a lack of binding authority "supports the conclusion that an employer has not acted willfully." *See* DE 121 at 28. Defendant's requirement of binding precedent is fabricated.

Although the defendant claims that the Fourth Circuit recognizes that binding precedent is required to find that the employer acted willfully, citing *Perez v. Mountaire Farms, Inc*., 650 F.3d 350, 375 (4th Cir. 2011), this is a misleading description of the Court's holding, where the Fourth Circuit found only that, under the not-applicable clear error standard, the district court did not *clearly err* in finding that the employer's violation was not willful. There is nothing in the

decision, in dicta or otherwise, that states or suggests that binding precedent is a prerequisite to a finding of willfulness. The defendant similarly fails to cite to any caselaw suggesting that an employer can be found to have recklessly disregarded the matter of whether its conduct was unlawful only if the underlying law is well-settled. In fact, to follow or adopt the defendant's invented "test" would eviscerate the Supreme Court's 1988 holding, rendering the third year completely unavailable in complex FLSA cases.[10] The test is whether the County knew or showed a "reckless disregard" as to whether its policy of classifying the Fire Captains as exempt violated the FLSA. The undisputed facts show that defendant acted with reckless disregard of the law. To allow the defendant to avoid paying the overtime to which the Captains are entitled based on a supposed lack of binding precedent, combined with caselaw interpreting no-longer applicable regulations, would circumvent the law and permit defendants a free pass to recklessly avoid FLSA compliance.

> **B.**    **The County Repeatedly and Deliberately Ignored Requests and Warnings That It Was Violating the FLSA**

Defendant further alleges that it cannot be found to have willfully violated the law as employee complaints do not by themselves establish willfulness. *See* DE 121, p. 30 (citing *Munston*, 951 F. Supp. at 611). Not surprisingly, the defendant fails to mention any of the other ways in which it has learned of, and ignored, the existence and applicability of the First Responder regulations.

As discussed at length in plaintiffs' prior filings and above, defendant was repeatedly notified of the potential applicability of the First Responder regulations but opted to do ***nothing***

---

[10] In *McLaughlin,* the Supreme Court stated that there are two ways to demonstrate that an employer's actions were willful: (1) either the employer knew its conduct was prohibited under the law or (2) the employer recklessly disregarded the ***possibility*** that its conduct may be prohibited under the law. *McLaughlin*, 486 U.S. at 133.

to ascertain its liability under the regulations or to analyze whether the regulations changed the application of the FLSA to Captains. *See e.g.* DE 124, pp. 19-23. In contrast to *Munston*, where the record included FLSA determinations made by a separate legal staff, determinations that were periodically reviewed and updated by a lawyer with specific FLA training, here the defendant took ***no steps*** since the promulgation of the First Responder regulations to determine whether plaintiffs were, in fact, covered by the FLSA. Moreover, courts have found that evidence of unanswered employee complaints supports a three year statute of limitations. *See, e.g., Brown v. L & P Indus.*, 2005 U.S. Dist. LEXIS 39920, \*29-30 (E.D. Ark. Dec. 21, 2005) (finding that the employer acted recklessly when the employee complained on numerous occasions that she was not an exempt executive, but the employer failed to contact either an attorney or DOL to verify that the employee was actually exempt); *see also Hardrick v. Airway Freight Sys.*, 63 F. Supp. 2d 898, 904 (N.D. Ill. 1999) (holding that the defendant acted in reckless disregard of the FLSA when it knew that overtime provisions existed, yet did not investigate whether its policies and agreements with the workers were legal).

To distract from the import of its failures, defendant casts the complaints regarding the FLSA as mere "employee inquiries." DE 121 at 30. Defendant's characterization of the evidence is misleading at best. *See*, pp 2-3, *supra* (highlighting the fallacy of defendant's justification for its FLSA failures and pointing to actual facts showing defendant's knowledge of the First Responder regulations; defendant's knowledge that other local jurisdictions pay their captains FLSA overtime pay; multiple employee requests for an FLSA review of the exempt status of Fairfax County Captains; and defendant's failure to provide documentation of its alleged "analysis" as well as its failure to respond to the inquiries with any explanation it now asserts a decade later). Thus, the undisputed facts demonstrate the County was informed repeatedly, on

numerous occasions, that it may be in violation of the First Responder regulations, yet it took no action whatsoever to either determine the mandates of the FLSA or rectify its violations of the law. Contrary to defendant's characterizations, these facts show not isolated employee complaints in the face of an updated employment manual maintained by a trained attorney, but instead a repeated, systemic pattern of defendant willfully ignoring the mandates of the law, an indifference that resulted in a windfall for the defendant as it avoided paying the Captains the wages they had earned for at least a decade. Thus, the Captains have demonstrated that they are entitled to the maximum statutory period of three years.

## V. CONCLUSION

The defendant has failed to carry its substantial burden of demonstrating that its violation of the FLSA with respect to the plaintiff Captains was made in good faith and was objectively reasonable. Moreover, the defendant has failed to rebut the evidence submitted by the plaintiffs showing that the County's actions were reckless. Accordingly, and for the reasons set forth above and in plaintiffs' earlier submissions, the Court should grant the plaintiffs' motion for summary judgment as to liquidated damages and a three-year statute of limitations.

Dated: September 19, 2014        Respectfully submitted,

/s/ Molly A. Elkin
Molly A. Elkin (Va. Bar No. 40967)
Sara L. Faulman
Robin S. Burroughs
WOODLEY & McGILLIVARY
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
mae@wmlaborlaw.com
slf@wmlaborlaw.com
rsb@wmlaborlaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of September, 2014, I electronically filed the foregoing memorandum using the CM/ECF system, which will send a notification of such filing to all counsel of record, including defendant's counsel:

Sona Rewari (VSB No. 47327)
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive
Suite 1700
McLean, Virginia 22102
srewari@hunton.com

Evangeline C. Paschal
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
epaschal@hunton.com

Lewis Powell, III
HUNTON & WILLIAMS
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
lpowell@hunton.com

　/s/ Molly A. Elkin　　　　　　　　　
Molly A. Elkin (Va. Bar No. 40967)
WOODLEY & McGILLIVARY LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC  20005
Phone:  (202) 833-8855
mae@wmlaborlaw.com

*Counsel for Plaintiffs*