IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

GERARD MORRISON, et al.,           )
                                   )
         Plaintiffs,               )
                                   )
v.                                 )   Civil Action No. 1:14-cv-005
                                   )
COUNTY OF FAIRFAX, VIRGINIA,       )
                                   )
         Defendant.                )

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Plaintiffs' and Defendant's cross-motions for summary judgment.

Plaintiffs in this case are fire captains employed by the Fairfax County Fire and Rescue Department ("Fire Department"). When they work in excess of their scheduled hours, the County of Fairfax, Virginia ("Defendant") pays them overtime at an hourly rate based on their annual salary as required by the Fair Labor Standards Act of 1938 ("FLSA"). Plaintiffs claim their overtime rate should be one and one-half times the standard hourly rate. Their claim fails because they are exempt from the FLSA's enhanced overtime requirement.

Personnel assigned to the Fairfax County Fire and Rescue Department's ("Fire Department's") 38 stations protect the lives, property, and environment of Fairfax County. The Fire Department follows a hierarchical rank structure extending from

the Fire Chief to fire fighters.[1] Between these two ends, the chain-of-command includes various levels of lesser chiefs, captains, lieutenants, and technicians. Plaintiffs are four different types of captains: Captain II station commanders, Captain II Emergency Medical Service (EMS) supervisors, Captain I shift supervisors, and Captain I safety officers (collectively, "Captains").

Captain II station commanders and Captain I shift supervisors are assigned to the Fire Department's Operations Bureau. Of the over 1,600 personnel within the Fire Department, and over 1,200 that work in the field, there are only 38 Captain II station commanders (one per station) and 76 Captain I shift supervisors (two shifts per station). These captains lead four-person fire engine crews in addition to performing a litany of administrative tasks. They are in charge of either a specific shift or an entire station.

Captain II EMS supervisors, also part of the Operations Bureau, oversee the provision of medical care at incidents involving accidents with injuries, people trapped, cardiac arrest, overdose, and hazardous materials. Additionally, they perform managerial and supervisory functions such as participating in Quality Management, reviewing electronic

---

1 Here, the term "fire fighter" refers to a specific rank within the Fire Department. It is used more generally in the First Responder Regulation, discussed *infra*.

Patient Care Reports, and evaluating compliance with government standards and established medical protocols.

Captain I safety officers fall under the Fire Department's Personnel Services Bureau. They also respond to fire scenes, but their work is not as hands-on as the other captains'. Instead, their duty is to monitor emergency operations and recognize hazards. Their management functions include formulating safety policy, service on accident review boards, and ensuring training compliance. Captain I safety officers serve as part of the incident command team at emergencies and participate in post-incident critique and analysis.

The Captains all spend the vast majority of their working hours managing station personnel and ensuring operational readiness. Although they participate in emergency response, the bulk of their time is spent performing the various tasks required to operate a fire station, such as: evaluating personnel; providing correction, guidance, and counsel to their subordinates; recommending and administering discipline; identifying training needs and requisitioning supplies; and physical fitness training.

The Captains are typically scheduled to work either nine 24-hour shifts (216 hours) or ten 24-hour shifts (240 hours) during a 28-day span. Captain IIs (station commanders and EMS supervisors) are paid at the F-27 grade ($77,798.86 –

$126,722.96, annually) while Captain Is (shift commanders and safety officers) are paid at the F-25 grade ($70,894.51 - $115,480.35). Defendant pays the Captains "straight time" for work in excess of 212 hours at an hourly rate based on their annual salary.

On March 21, 2014, Plaintiffs filed their second amended complaint, arguing Defendant violated §§ 207(a) and 207(k) of the FLSA by not paying the Captains overtime at a time and one half rate. They seek: a declaratory judgment that Defendant has willfully violated federal law; additional compensation based on overtime worked plus interest; liquidated damages under § 216(b) equal to the unpaid compensation; and attorney fees. Following discovery, both parties now move for summary judgment.

Overtime pay standards for local government employees, including firefighters, are established by the FLSA. 29 U.S.C.A. §§ 207, 203(s)(1)(C). Overtime pay is typically calculated based on a standard 40-hour workweek, but provision is made for "special concerns" pertaining to firefighters and law enforcement officers. Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 554 n.17, 105 S. Ct. 1005, 1019 (1985). Section 207(k) states overtime at a rate of not less than one and one-half times the regular rate must be paid to firefighters that work in excess of 216 hours during a work period between

seven and 28 days. But see 29 C.F.R. § 553.201 (former 216-hour overtime standard replaced by 212 hours).

The FLSA's overtime provisions are not universal; certain categories of employees are exempt, including "any employee employed in a bona fide executive, administrative, or professional capacity" ("Executive Exemption"). 29 U.S.C.A. § 213(a)(1). The Executive Exemption applies to employees: 1) who are compensated on a salary basis at a rate of not less than $455 per week; 2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; 3) who customarily and regularly direct the work of two or more other employees; and 4) who have the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a). The Executive Exemption, like all exemptions, must be "narrowly construed against the employers seeking to assert them." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S. Ct. 453, 456, 4 L. Ed. 2d 293 (1960).

Department of Labor (DOL) regulations—which have the force of law—implement the FLSA. Of particular relevance to this case is a 2004 DOL regulation ("First Responder Regulation") stating the Executive Exemption "do[es] not apply to…fire

fighters…regardless of rank or pay level" provided they perform certain types of fire prevention and control work. 29 C.F.R. § 541.3(b)(1). Under the First Responder Regulation, the Executive Exemption does not apply to covered employees "because their primary duty is not management of the enterprise in which the employee is employed…." § 541.3(b)(2). It shields firefighters from the Executive Exemption even if they "[direct] the work of other employees in…fighting a fire." § 541.3(b)(2).

The facts and argument in this case are not new to this Court. In 1989 this Court considered two similar lawsuits (one involving fire shift commanders in Arlington County, one involving engine captains in the City of Alexandria) arguing those captains were not exempt from the FLSA's overtime provisions. Hartman v. Arlington County, Va., 720 F. Supp. 1227 (E.D. Va. 1989) aff'd, 903 F.2d 290 (4th Cir. 1990); Int'l Ass'n of Firefighters v. City of Alexandria, 720 F. Supp. 1230 (E.D. Va. 1989) aff'd, 912 F.2d 463 (4th Cir. 1990). In Hartman and Int'l Ass'n of Firefighters, this Court held that shift commanders and engine captains were exempt because their primary duty was fire station management. Hartman, 720 F. Supp. at 1229; Int'l Ass'n of Firefighters, 720 F. Supp. at 1233.

In 1990, both Hartman and Int'l Ass'n of Firefighters were affirmed by the United States Court of Appeals for the Fourth Circuit which, in its affirmation of Hartman, cited a series of

lower court decisions with similar holdings. 903 F.2d at 291-92. Later, the Fourth Circuit upheld the Executive Exemption's application to EMS captains in West v. Anne Arundel Cnty., Md., 137 F.3d 752 (4th Cir. 1998). Put simply, the exempt status of fire captains and EMS captains in the Fourth Circuit is well-established.

Plaintiffs contend the First Responder Regulation changed the applicability of the Executive Exemption to firefighters, making pre-2004 case law in this area obsolete. They are incorrect; the Executive Exemption continues to place the Captains outside the FLSA's overtime provisions.

When analyzing the First Responder Regulation, this Court "should not confine itself to examining a particular…provision in isolation. Rather, the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." King v. Burwell, 759 F.3d 358, 368 (4th Cir. 2014) (quoting Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 666, 127 S. Ct. 2518, 2534, 168 L. Ed. 2d 467 (2007)). Thus, the First Responder Regulation must be interpreted as a whole to determine its proper application.

Plaintiffs contend that § 541.3(b)(1) of the First Responder Regulation is dispositive but treat the rest of the regulation as irrelevant surplusage. Read in context, however, the First Responder Regulation plainly applies to "blue collar"

firefighters, protecting their non-exempt status even if they direct other employees while fighting fires.

The First Responder Regulation is one of two provisions in § 541.3 clarifying the scope of the Executive Exemption. Section 541.3(a) ensures "blue collar" workers are "not exempt under the [Executive Exemption] no matter how highly paid they might be." Section 541.3(b), the First Responder Regulation, continues to address "blue collar" employees. It clarifies:

> Thus, for example, a police officer or fire fighter whose primary duty is to investigate crimes or fight fires is not exempt under [the Executive Exemption] of the [FLSA] merely because the police officer or fire fighter also directs the work of other employees in the conduct of an investigation or fighting a fire.

§ 541(b)(2).

Instead of reading the First Responder Regulation in the context of § 541.3 as a whole, Plaintiffs seize on § 541.3(b)(1)'s applicability "regardless of rank or pay level." Under their reading of § 541.3(b)(1), the Executive Exemption does "not apply to fire fighters, regardless of rank or pay level[,] because management is not their primary duty." Read in context, however, the First Responder Regulation ensures the Executive Exemption does not apply to "blue collar" firefighters, regardless of rank or pay level, regardless of the work they do at a fire scene. This is wholly consistent with §

541.3(a)'s application to "blue collar" laborers "no matter how highly paid they might be."

Plaintiffs' interpretation of the First Responder Regulation has no limiting principle. If their argument is accepted, every employee of the FCFRD that performs *any* hands-on firefighting work would be non-exempt. Presumably, this would include the Fire Chief. If the First Responder Regulation was intended to apply universally to every member of the Fire Department, it would be nonsensical for its clarifying text to address "blue collar" firefighters at or near the bottom of the chain of command whose only managerial duties come during the course of fighting a fire. A regulation intended to take captains (and chiefs) outside the scope of the Executive Exemption would not use "blue collar" employees to explain its application.

The Captains' status as exempt executives was not changed by the First Responder Regulation. They are compensated on a salary basis at a rate of not less than $455 per week; their primary duty is management of the enterprise; they customarily and regularly direct the work of two or more other employees; and their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. Therefore, they are

exempt from the FLSA's overtime provisions under 29 U.S.C.A. § 213(a)(1).

Because Defendants are not liable for failing to pay overtime in accordance with the FLSA, it is unnecessary to address either party's motion for partial summary judgment regarding liquidated damages and the applicable statute of limitations.

An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
October 31, 2014